Opinion
 

 MOSK, J.
 

 Defendant sought mandatory attorney fees after he moved to strike allegations in a so-called strategic lawsuit against public participation, or SLAPP action, under section 425.16 of the Code of Civil Procedure. The superior court granted the motion and awarded attorney fees, including fee enhancements based on contingent risk and the exceptional quality of the legal services provided. We granted review to address the question whether the attorney fees were properly calculated in this matter. As will appear, based on our review of record, we conclude that they were not.
 

 I
 

 Plaintiff Smith A. Ketchum III owns a multi-unit apartment building in Sausalito. His tenant, defendant John M. Moses, reported numerous code violations to government agencies, including the Sausalito fire and building departments. According to another tenant, Ketchum referred to Moses as a “troublemaker” and stated that he would “get [him] into court” and “keep him there,” asserting that he could “afford the best lawyers” while Moses could obtain only “cheap legal aid.”
 

 In October 1995, Ketchum filed an action against Moses seeking compensatory and exemplary damages, including allegations that he had made false complaints to the various local government agencies in an effort to harass, annoy, and inflict emotional distress on him. Attorney Jeremy L. Friedman agreed to represent Moses on a contingent fee basis. In January 1996, he filed a special motion to strike under Code of Civil Procedure section 425.16, on the ground that the suit constituted a SLAPP action. The special motion was supported by declarations of government officials to the effect that their inspections based on Moses’s reports revealed numerous code violations involving hazardous conditions, and that tenants should not be discouraged from reporting such information. Friedman attempted to negotiate a dismissal without formal court action, but was informed by Ketchum’s counsel that there was no possibility of settlement. Instead, Ketchum filed an opposition to the motion, supported by declarations by himself and an attorney.
 

 In April 1996, the superior court granted the special motion. Other claims by the parties, including a claim by Ketchum of assault and battery, and
 
 *1128
 
 claims by Moses of harassment, breach of the warranty of habitability, and retaliatory eviction, were subsequently settled by the parties.
 

 In June 1996, Moses moved for an award of attorney fees, as authorized by Code of Civil Procedure section 425.16, subdivision (c). The motion was supported by extensive documentation, including itemized time and expense notes and a declaration describing Attorney Friedman’s experience and expertise. Moses also included declarations of attorneys in the area averring to the local market rate for comparable representation, including the additional premium typically charged for representation undertaken on a contingent fee basis. The declarations stated, inter alia, that upward adjustments in the range of two to four times normal hourly rates are the prevailing practice in the area for contingent risk cases and that a fee enhancement of at least 2.0 is required to attract competent counsel to cases where statutory fees are authorized; they provided numerous examples of fee enhancements awarded in cases involving statutory fee-shifting provisions.
 

 Ketchum sought a full evidentiary hearing, including oral testimony of experts and cross-examination of Moses’s counsel. Although the superior court observed that the motion was “being overtried” by Ketchum, it permitted him to depose Moses’s counsel and to submit the declaration of a fee expert. With regard to the possibility of an additional fee request based on the fee dispute, Ketchum’s attorney replied: “I’ll take the risk.”
 

 At the hearing, in August 1996, the superior court explained: “I practiced law mostly as a litigator for about 15 years. I’ve been on the bench 18 years reviewing fee requests on numerous types of cases, being familiar with many law firms practicing in rural areas as well as in the big city south of here [i.e., San Francisco] .... I know what the going rates are. I know what lawyers have to do and I know what cases are worth and how much time it takes.” With respect to the fee enhancement, it continued: “[T]he case law is clear that the Court should consider seriously setting the fees in the form of a lodestar and considering a multiplier, and I think this is a good case for it.” It ruled that a fee enhancement should be applied to the lodestar figure, based on “the contingent nature of the case and because of the exceptional representation by Mr. Friedman and his qualifications as proven by the quality of his work as well as declarations as to his legal expertise.” It acknowledged that attorney fees under the statute should not be punitive but indicated that it was troubled by the evidence concerning Ketchum’s motivation for bringing the action: “There shouldn’t be anything punitive in this proceeding although I will say I can’t get out of my mind the alleged statement that Dr. Ketchum made [about] Mr. Moses that Mr. Friedman quoted in his opening paper several months ago,” apparently referring to
 
 *1129
 
 Ketchum’s statement to another tenant that he would make the case so expensive that Moses would not be able to afford a lawyer. With regard to additional attorney fees incurred in the fee dispute, it found that Ketchum was responsible for the increased fees, describing his “full formal battle” as “somewhat like building a sand castle at low tide.”
 

 In August 1996, the superior court awarded Moses attorney fees in the amount of $140,212. The fees included a lodestar amount of $70,106, for costs incurred in the motion to strike and for the fee motion. The lodestar was based on the market rate for comparable legal services in a noncontingent matter. The superior court applied a fee enhancement of 2.0 based on the contingent risk of nonpayment and the exceptional quality of representation by Friedman.
 

 Ketchum substituted new counsel and sought reconsideration and a stay of the fee order. He asserted, for the first time, that he was unaware of the filing of the SLAPP litigation until April 1996, after the motion to strike had been granted. Moses responded that the assertion was false and perjurious, citing in-court statements by Ketchum prior to April 1996 acknowledging his personal knowledge of the SLAPP litigation.
 

 The superior court denied the motions for reconsideration and a stay. At the hearing on the motions, in November 1996, the superior court referred to the basis for its award: “I remember something about six months ago pointing out to Dr. Ketchum the fact that his statement to one of the other tenants in the apartment building was that he would really put the defendant, Mr. Moses, through hoops and make it impossible for him to get a lawyer. That was part of my thinking and ruling on the amount of attorney’s fees and the multiplier as well. And I intended by that to give my message that that kind of statement goes against his interests.” It also indicated that it was inclined to award supplemental fees and costs for work expended on the motion for reconsideration and enforcement of the judgment subject to the same multiplier that was applied to the August 1996 award: “And I pointed out that Mr. Moses isn’t being decompensated if he worked for fees, but has to spend three times that to collect them, and therefore, I awarded fees on fees. And that doesn’t indicate my bias, or prejudice, or inten[t] to punish, but it is a.message.”
 

 In December 1996, the superior court awarded supplemental attorney fees and costs in the amount of $112,160. At the hearing, the superior court again referred to Ketchum’s apparent motivation in bringing the SLAPP action: “[Assigning blame for the length and complexity of this proceeding doesn’t serve any purpose no matter who’s blamed. And I don’t know if the genesis
 
 *1130
 
 of all this problem was the five lines that [original counsel for Ketchum] put in the complaint or Dr. Ketchum’s alleged statement to the other tenant of the apartment building that he denies making. I say alleged statement that he denies making, that he’s going to make this so expensive for Mr. Moses that he’ll never be able to afford a lawyer. And if he did say that, that I think is the genesis of his problems . . . .”
 

 Ketchum appealed. He contended, inter alia, that the superior court abused its discretion in calculating the amount of the attorney fees award. The Court of Appeal reversed. It held that there was no abuse of discretion with regard to the lodestar amount or the award of fees incurred both for the motion to strike and to defend the fee claim. But it concluded that the superior court lacked authority to apply a fee enhancement to the lodestar figure. Relying in large part on the majority opinion in
 
 Burlington
 
 v.
 
 Dague
 
 (1992) 505 U.S. 557 [112 S.Ct. 2638, 120 L.Ed.2d 449] (hereafter sometimes
 
 Dague),
 
 which addressed the use of fee enhancements in calculating attorney fees under the fee-shifting provisions of two federal statutes, it concluded that the use of a fee enhancement “will at best serve no purpose and at worst encourage pursuit of unmeritorious claims.”
 

 We granted review; we now affirm the judgment of the Court of Appeal on the basis that the superior court abused its discretion in the awarding of the fees.
 

 II
 

 Code of Civil Procedure section 425.16, subdivision (b), in relevant part provides that “[a] cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.”
 

 The purpose of the so-called anti-SLAPP provision is expressly stated in the statute as follows. “The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.” (Code Civ. Proc., § 425.16, subd. (a).) The statute protects, inter alia, direct petitioning of the government and petition-related statements and writings,
 
 *1131
 
 whether or not the statement is made in connection with a public issue.
 
 (Briggs v. Eden Council for Hope & Opportunity
 
 (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].)
 

 The special motion to strike—or so-called anti-SLAPP motion—is subject to statutory fee shifting as follows. “In any action subject to [the special motion to strike], a prevailing defendant. . . shall be entitled to recover his or her attorney’s fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney’s fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] [s]ection 128.5.” (Code Civ. Proc., § 425.16, subd. (c).)
 

 Thus, under Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to “chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.”
 
 (Id.,
 
 subd. (a).) The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement. As will appear, by its terms, Code of Civil Procedure section 425.16 permits the use of the so-called lodestar adjustment method under our long-standing precedents, beginning with
 
 Serrano
 
 v.
 
 Priest
 
 (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (hereafter
 
 Serrano III).
 

 In
 
 Serrano III,
 
 we concluded that the court could award attorney fees under a “private attorney general” theory to public interest law firms that had successfully represented plaintiffs in an action challenging the constitutionality of the then existing California public school financing system. In so holding, we expressly declined to follow United States Supreme Court precedent precluding such fees.
 
 (Serrano III, supra,
 
 20 Cal.3d at p. 43 [rejecting majority holding in
 
 Alyeska Pipeline Co.
 
 v.
 
 Wilderness Society
 
 (1975) 421 U.S. 240 [95 S.Ct. 1612, 44 L.Ed.2d 141].) We explained that “the fashioning of equitable exceptions” to the California rule that parties must bear their own costs “is a matter within the sole competence of this court.”
 
 (Serrano III, supra,
 
 20 Cal.3d at p. 43.) As we later reemphasized, with regard to questions about how attorney fee awards must be assessed, “[w]e envision an independent state rule.”
 
 (Serrano v. Unruh
 
 (1982) 32 Cal.3d 621, 639, fn. 29 [186 Cal.Rptr. 754, 652 P.2d 985]
 
 (Serrano IV).)
 

 Under
 
 Serrano III,
 
 a court assessing attorney fees begins with a touchstone or lodestar figure, based on the “careful compilation of the time' spent and
 
 *1132
 
 reasonable hourly compensation of each attorney ... involved in the presentation of the case.”
 
 (Serrano III, supra,
 
 20 Cal.3d at p. 48.) We expressly approved the use of prevailing hourly rates as a basis for the lodestar, noting that anchoring the calculation of attorney fees to the lodestar adjustment method “ ‘is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.’ ”
 
 (Id.
 
 at p. 48, fn. 23.) In referring to
 
 "reasonable,"
 
 compensation, we indicated that trial courts must carefully review attorney documentation of hours expended; “padding” in the form of inefficient or duplicative efforts is not subject to compensation. (See
 
 id.
 
 at p. 48.)
 

 Under
 
 Serrano III,
 
 the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.
 
 (Serrano III, supra, 20
 
 Cal.3d at p. 49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. The “ ‘experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to. review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.’ ”
 
 (Ibid.)
 

 As we explained in
 
 Rader v. Thrasher
 
 (1962) 57 Cal.2d 244, 253 [18 Cal.Rptr. 736, 368 P.2d 360]: “ ‘[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.’ ” The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.
 

 The economic rationale for fee enhancement in contingency cases has been explained as follows: “A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional
 
 *1133
 
 loans.” (Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567.) “A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.” (Leubsdorf,
 
 The Contingency Factor in Attorney Fee Awards
 
 (1981) 90 Yale L.J. 473, 480; see also Rules Prof. Conduct, rule 4-200(B)(9) [recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable]; ABA Model Code Prof. Responsibility, DR 2-106(B)(8) [same]; ABA Model Rules Prof. Conduct, rule 1.5(a)(8).)
 

 Such fee enhancements are intended to compensate for the risk of loss generally in contingency cases
 
 as a class. (Beasley v. Wells Fargo Bank
 
 (1991) 235 Cal.App.3d 1407, 1419 [1 Cal.Rptr.2d 459].) In cases involving enforcement of constitutional rights, but little or no damages, such fee enhancements may make such cases economically feasible to competent private attorneys.
 
 (Weeks v. Baker & McKenzie
 
 (1998) 63 Cal.App.4th 1128, 1172 [74 Cal.Rptr.2d 510].) “[M]ost lawyers of this quality do seem to consider the prospects of success and the fee recoverable before adding to their crowded calendars a case in which payment is contingent.” (Leubsdorf,
 
 The Contingency Factor in Attorney Fee Awards, supra,
 
 90 Yale L.J., at p. 501.)
 

 In
 
 Serrano TV,
 
 applying the same principles to the statutory fee award under Code of Civil Procedure section 1021.5, we reiterated that fee awards should be fully compensatory. We approved the calculation of attorney fees beginning with a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting
 
 noncontingent
 
 litigation of the same type.
 
 (Serrano IV, supra,
 
 32 Cal.3d at p. 625.) We remarked that the reasonable value of attorney services is variously defined as the “ ‘hourly amount to which attorneys of like skill in the area would typically be entitled.’ ”
 
 (Id.
 
 at p. 640, fn. 31; see also
 
 id.
 
 at p. 643 [“Services compensable under [Code of Civil Procedure] section 1021.5 are computed from their reasonable market value”].) We noted that the lodestar figure was subject to augmentation based on factors including the contingent nature of the litigation. (32 Cal.3d at p. 626, fn. 6.)
 

 We held in
 
 Serrano TV
 
 that, absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for
 
 all
 
 the hours
 
 reasonably spent,
 
 including those relating solely to the fee.
 
 (Serrano IV, supra,
 
 32 Cal.3d at pp. 624, 639.) We explained that the purpose behind statutory fee authorizations—i.e., encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the
 
 *1134
 
 public interest—“will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim.”
 
 (Id.
 
 at p. 632.) Fees would not be recoverable for an appeal that reversed an award entirely or reversed as excessive an award that was contested as inadequate.
 
 (Id.
 
 at p. 639, fn. 28.)
 

 Subsequently, in
 
 Press v. Lucky Stores, Inc.
 
 (1983) 34 Cal.3d 311, 322 [193 Cal.Rptr. 900, 667 P.2d 704], we underscored the importance of the “proper determination and use of the lodestar figure” in calculating awards of statutory attorney fees. We acknowledged the discretion of the trial court in setting attorney fees, but emphasized that because the determination of the lodestar figures is so fundamental to arriving at an objectively reasonable amount, “the exercise of that discretion must be based on the lodestar adjustment method.”
 
 (Ibid.)
 
 We also reiterated that the lodestar figure may be increased by application of a fee enhancement, or reduced as appropriate, after the trial court has considered other factors concerning the lawsuit, including the contingent nature of the fee award.
 
 (Ibid.)
 

 Maria P. v. Riles
 
 (1987) 43 Cal.3d 1281, 1294-1295 [240 Cal.Rptr. 872, 743 P.2d 932], reaffirmed the use of the lodestar adjustment method first announced in
 
 Serrano III.
 
 We again explained that the lodestar figure may be increased or decreased depending on a variety of factors, including the contingent nature of the fee award.
 
 (Ibid.)
 

 More recently, in
 
 PLCM Group, Inc. v. Drexler
 
 (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511], we instructed: “[T]he fee setting inquiry in California ordinarily begins with the ‘lodestar,’ i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.
 
 (Serrano
 
 [III],
 
 supra,
 
 20 Cal.3d at p. 49.) Such an approach anchors the trial court’s analysis to an objective determination of the value of the attorney’s services, ensuring that the amount awarded is not arbitrary.”
 

 The lodestar adjustment method prescribed in
 
 Serrano III, Serrano IV, Press, Maria P.,
 
 and
 
 Drexler
 
 has also been widely applied by the Courts of Appeal under a broad range of statutes authorizing attorney fees. (See, e.g.,
 
 Meister
 
 v.
 
 Regents of University of California
 
 (1998) 67 Cal.App.4th 437, 448-449 [78 Cal.Rptr.2d 913] [Information Practices Act (Civ. Code, § 1798.48, subd. (b)];
 
 Flannery v. California Highway Patrol
 
 (1998) 61 Cal.App.4th 629, 647 [71 Cal.Rptr.2d 632] [Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)];
 
 Downey Cares
 
 v.
 
 Downey Community
 
 
 *1135
 

 Development Com.
 
 (1987) 196 Cal.App.3d 983, 995-996 [242 Cal.Rptr. 272] [Political Reform Act of 1974 (Gov. Code, § 81000 et seq.)];
 
 Beasley
 
 v.
 
 Wells Fargo Bank, supra,
 
 235 Cal.App.3d 1407, 1412 [Code Civ. Proc., § 1021.5];
 
 City of Oakland v. Oakland Raiders
 
 (1988) 203 Cal.App.3d 78, 83-84 [249 Cal.Rptr. 606] [eminent domain];
 
 Sternwest Corp. v. Ash
 
 (1986) 183 Cal.App.3d 74, 75-76 [227 Cal.Rptr. 804] [Civ. Code, § 1717];
 
 Salton Bay Marina, Inc.
 
 v.
 
 Imperial Irrigation Dist.
 
 (1985) 172 Cal.App.3d 914, 957-958 [218 Cal.Rptr. 839] [inverse condemnation].)
 

 Indeed, as the Court of Appeal in
 
 Flannery
 
 observed: “[T]he Legislature appears to have endorsed the [lodestar adjustment] method of calculating fees, except in certain limited situations.”
 
 (Flannery v. California Highway Patrol, supra,
 
 61 Cal.App.4th 629, 646.) When the Legislature has determined that the lodestar adjustment approach is not appropriate, it has expressly so stated. Thus, in 1993, it amended Code of Civil Procedure section 1021.5 to provide that attorney fees awarded to a public entity under the section “shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in
 
 [Serrano III, supra,]
 
 20 Cal. 3d 25, 49.” (Stats. 1993, ch. 645, § 2, p. 3747.) Its express restriction on the use of fee enhancements therein “can be read as an implicit endorsement of their use in other contexts.”
 
 (Flannery
 
 v.
 
 California Highway Patrol, supra,
 
 61 Cal.App.4th at p. 643; see also
 
 Meister v. Regents of University of California, supra,
 
 67 Cal.App.4th at pp. 448-449 [lodestar adjustment method applies to a statutory fee award unless the statutory authorization for the award provided for another method of calculation].)
 
 [1]
 

 When legislation has been judicially construed and subsequent statutes on a similar subject use identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears.
 
 (In re Jerry R.
 
 (1994) 29
 
 *1136
 
 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155];
 
 People
 
 v.
 
 McGuire
 
 (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [“The Legislature ‘is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted ... a statute in light thereof.’ ”].) Here, because the anti-SLAPP provisions refer to attorney fees and costs without indicating any restrictions on how they are to be calculated, we accordingly presume that the Legislature intended courts use the prevailing lodestar adjustment method. (Cf.
 
 Trope
 
 v.
 
 Katz
 
 (1995) 11 Cal.4th 274, 282 [45 Cal.Rptr.2d 241, 902 P.2d 259] [in enacting Civ. Code, § 1717, the Legislature is presumed to have adopted the definition of “attorney’s fees” under existing decisional law].)
 

 We emphasize, however, that although we are persuaded that the lodestar adjustment approach should be applied to fee awards under Code of Civil Procedure section 425.16, we are not mandating a blanket “lodestar only” approach; every fee-shifting statute must be construed on its own merits and nothing in
 
 Serrano
 
 jurisprudence suggests otherwise.
 

 Ill
 

 The Court of Appeal concluded that the superior court was without authority to award any fee enhancement. It erred in so holding. The lodestar adjustment approach we adopted in
 
 Serrano III,
 
 and which is permitted under Code of Civil Procedure section 425.16, allows a court awarding attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for comparable legal services.
 

 Nor was the Court of Appeal correct, as a matter of policy, that fee enhancements under Code of Civil Procedure section 425.16 “at best serve no purpose.” As discussed, the legislative aim in including the attorney fee provision was apparently to strengthen enforcement of certain constitutional rights, including freedom of speech and petition for redress of grievances, by placing the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system, and by encouraging private representation, including instances when a litigant cannot afford fees. “The experience of the marketplace indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk.” (Berger,
 
 Court Awarded Attorneys’ Fees: What is “Reasonable"?
 
 (1977) 126 U.Pa. L.Rev. 281, 324-325.)
 

 Ketchum urges that we should adopt the policy arguments in the United States Supreme Court decision in
 
 Burlington v. Dague, supra,
 
 505 U.S. 557,
 
 *1137
 
 which barred the use of fee enhancements in certain types of cases in the federal courts. After careful consideration we decline to do so. We are not, of course, bound by the decision in
 
 Dague.
 
 “[T]he fashioning of equitable exceptions” to the California rule that parties must bear their own costs “is a matter within the sole competence of this court.”
 
 (Serrano III, supra,
 
 20 Cal.3d at p. 43.) More important, the lodestar adjustment method, including discretion to award fee enhancements, is well established under California law. In the more than 20 years since
 
 Serrano III,
 
 both before and after the decision in
 
 Dague,
 
 our courts have applied the lodestar adjustment method and our Legislature has enacted numerous fee-shifting statutes, including the one at issue here, presumptively acquiescing in the long-standing use of the lodestar adjustment method by courts determining the amount of fee awards.
 

 Nor are the considerations of the majority opinion in
 
 Burlington v. Dague, supra,
 
 505 U.S. 557, which involved issues of federal law and practice, applicable herein.
 
 [2]
 

 Specifically, we disagree that permitting a fee enhancement for contingency cases under Code of Civil Procedure section 425.16 will encourage unmeritorious claims. Indeed, the provision authorizes recovery of attorney fees only to
 
 defend against
 
 unmeritorious claims.
 
 (Id.,
 
 subd. (c).) It
 
 discourages
 
 unmeritorious strike motions by imposing attorney fees on the defendant if the court finds that such motion is frivolous or solely intended to cause unnecessary delay.
 
 (Ibid.)
 
 Because a prevailing party will receive attorney fees only if the case is successful, there is little or no incentive to pursue nonmeritorious cases. And, in any event, attorney fees may be awarded only for
 
 hours reasonably spent,
 
 thus discouraging unnecessary or frivolous litigation.
 
 “Prevailing parties
 
 are compensated for hours reasonably spent on fee-related issues. A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.”
 
 (Serrano IV, supra,
 
 32 Cal.3d at p. 635.)
 

 For similar reasons, we disagree that a fee enhancement improperly permits attorneys to “pool” the risk in contingency cases, and thus, in effect, receive payment for cases in which their clients did not prevail. Code of Civil Procedure section 425.16, subdivision (c), permits only a
 
 prevailing party
 
 to recover attorney fees; the calculation of an appropriate fee has nothing to do with the amount of time his or her attorney may actually invest
 
 *1138
 
 in other, unrelated, losing cases. As discussed, the purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class. To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether.
 
 [3]
 

 Nor is it true that applying a fee enhancement will inevitably result in unfair double counting or a windfall to attorneys representing SLAPP defendants. Under our precedents, the unadorned lodestar reflects the general local hourly rate for a
 
 fee-bearing
 
 case; it does
 
 not
 
 include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under
 
 Serrano III.
 
 The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees. In this case, for example, the lodestar was expressly based on the general local rate for legal services in a
 
 noncontingent
 
 matter, where a payment is certain regardless of outcome.
 

 Of course, the trial court is not
 
 required
 
 to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof. In each case, the trial court should consider whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount regardless of outcome. It should also consider the degree to which the relevant market compensates for contingency risk, extraordinary skill, or other factors under
 
 Serrano III.
 
 We emphasize that when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar. The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar. A more difficult legal question typically requires more attorney hours, and a more skillful and
 
 *1139
 
 experienced attorney will command a higher hourly rate. (See
 
 Margolin
 
 v.
 
 Regional Planning Com.
 
 (1982) 134 Cal.App.3d 999, 1004 [185 Cal.Rptr. 145].) Indeed, the “ ‘reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors ... the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney’s reputation, and the undesirability of the case.’ ”
 
 (Ibid.)
 
 Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable. Nor should a fee enhancement be imposed for the purpose of punishing the losing party.
 

 Ketchum proposes that even if fee enhancements are not precluded under
 
 all
 
 fee-shifting provisions, at the very least they should not be permitted in the case of anti-SLAPP motions. As a matter of statutory construction, he urges that by using the phrase “his or her attorney’s fees and costs” rather than a “reasonable attorney’s fee,” the Legislature, in Code of Civil Procedure section 425.16, subdivision (c), indicated the intention to limit a prevailing defendant’s attorney fees to “actual expenses caused by the improper pleading.” The omission of the word “reasonable” does not imply any such purpose. Ketchum offers no persuasive support for his contention, either in precedent or the legislative history. As discussed, when the Legislature has intended to preclude fee enhancements, it has done so expressly.
 

 Finally, Ketchum argues that because anti-SLAPP motions involve “relatively simple” issues and are subject to “quick resolution,” we should therefore eliminate the discretion of trial courts to award fee enhancements. Again, he is unpersuasive. This matter, which involved years of contentious litigation and prolonged delays, belies his premise. The ability to recover fees for representing a client under the anti-SLAPP provisions is contingent on prevailing on the special motion to strike and on postmotion disputes whose resolution may be complex and time consuming. We do not suggest that contingent risk or other fee enhancements are required in every SLAPP case. But in the absence of any indication by the Legislature of the intent to specially limit attorney fees in anti-SLAPP actions, we decline to impose a per se rule against such fee enhancements.
 
 [4]
 

 
 *1140
 
 IV
 

 Ketchum contends that the superior court made numerous errors in applying the legal standards for setting and adjusting the lodestar attorney fees in this case. We agree in part, and address each contention in turn.
 

 With regard to the lodestar figure set by the superior court, we agree with the Court of Appeal that the superior court did not abuse its discretion. The lodestar was based on detailed documentation by counsel and there was extensive litigation concerning the time spent and the prevailing hourly rate in the area for comparable services.
 

 We also reject Ketchum’s contention that the superior court merely “rubber stamped” the request without an independent assessment. The record reflects that the superior court reviewed extensive documentation concerning the amount of the fees, including deposition testimony of Moses’s attorney and Ketchum’s fee expert, and declarations by Bay Area attorneys concerning the prevailing rates for contingency fee cases. There was also extensive oral argument with regard to the fee award. We have no reason to doubt that the superior court conducted an independent assessment of the evidence
 
 [5]
 

 Ketchum also contends that the superior court erred by failing to provide a “reasoned explanation” for denying his objections to specific items in the billing records. The superior court was not required to issue a statement of decision with regard to the fee award. (See
 
 Maria P. v. Riles, supra,
 
 43 Cal.3d at p. 1294.) Moreover, although Ketchum opposed the motion for attorney fees, he did not request a statement of decision with specific findings. “ ‘All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.’ ”
 
 (Denham v. Superior Court
 
 (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) As we explained in
 
 Maria P.:
 
 “It is the
 
 *1141
 
 burden of the party challenging the fee award on appeal to provide an adequate record to assess error. [Citations.] Here, [Ketchum] should have augmented the record with a settled statement of the proceeding. [Citations.] Because [he] failed to furnish an adequate record of the attorney fee proceedings, [Ketchum’s] claim must be resolved against [him].”
 
 (Maria P.
 
 v.
 
 Riles, supra,
 
 43 Cal.3d at pp. 1295-1296.)
 

 Ketchum further asserts that the fee award improperly included “fees on fees,” i.e., fees incurred in litigating the award of attorney fees. The Court of Appeal correctly rejected the argument: an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16. As we explained in
 
 Serrano IV, supra,
 
 32 Cal.3d at page 639, “following] the rule of the overwhelming majority of courts that have considered the question . . . . [w]e hold . . . that, absent circumstances rendering the award unjust, fees recoverable . . . ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim.” The amount of litigation on this issue typically lies in the plaintiff’s hands: having litigated the matter tenaciously, Ketchum “ ‘cannot ... be heard to complain about the time necessarily spent by the [defendant] in response.’ ”
 
 (Id.
 
 at p. 638.)
 
 [6]
 

 With regard to the amount of the fee enhancement, and its application to the award of fees on fees, however, we are persuaded that Ketchum’s assertions of error have sufficient merit to require remand of this matter for recalculation of attorney fees under an appropriate exercise of discretion pursuant to the standard we have clarified herein.
 

 Thus, even assuming that Moses did not, as Ketchum asserts, intentionally waive any enhancement for “fees on fees,” it appears that no enhancement for contingent risk was properly applied to such fees. Although the entitlement to attorney fees on the motion to strike was subject to the risk that Moses and his attorney might not prevail on the motion and thus not be entitled to attorney fees, once the motion was successful, attorney fees were
 
 *1142
 

 mandatory
 
 under Code of Civil Procedure section 425.16, subdivision (c). An award of fees was, accordingly, no longer contingent. For this reason, it was error for the superior court to apply an enhancement for contingent risk to the fees on fees accrued after the motion to strike was granted.
 

 We are also concerned that the substantial enhancement herein purportedly based on exceptional quality of representation may have included improper double counting. The record is not entirely clear on this point. At the hearing in August 1996, the superior court justified the enhancement based in part on “the exceptional representation by Mr. Friedman and his qualifications as proven by the quality of his work as well as declarations as to his legal expertise that he submitted in connection with the original [fees] motion in this case.” The qualifications of Mr. Friedman, however, were presumably included in the hourly rate used to calculate the lodestar. (See
 
 Margolin v. Regional Planning Com., supra,
 
 134 Cal.App.3d at p. 1004.) Indeed, the declarations referenced by the court at the hearing described the qualifications of Mr. Friedman in terms of the rates charged by other attorneys of similar experience and skill. By using counsel’s qualifications and the submitted declarations to justify both the hourly rate and the multiplier, the court appears to have counted the same factor twice.
 

 Finally, Ketchum points to indications in the record suggesting that the superior court may improperly have permitted its disapproval of his litigation strategy to influence its selection of the enhancement amount. Indeed, the superior court repeatedly adverted to allegations that Ketchum threatened to “keep Moses in court.” Regardless of what he may or may not have said to another tenant concerning his litigation strategy, an enhancement for contingent risk or quality of representation may not properly be imposed merely for the purpose of punishing Ketchum.
 

 V
 

 For the foregoing reasons, we affirm the judgment of the Court of Appeal and remand the case with directions that it be remanded in turn to the superior court for recalculation of attorney fees consistent with the views expressed herein.
 

 George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 Respondent’s petition for a rehearing was denied May 16, 2001.
 

 [1]
 

 The legislative history of the 1993 amendment to Code of Civil Procedure section 1021.5 supports this conclusion. Thus, an analysis of the Senate bill to amend the statute explains: “Fee awards to public entities may not be increased or decreased by use of a ‘multiplier,’
 
 as otherwise authorized by law.”
 
 (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 764 (1993-1994 Reg. Sess.) as amended Sept. 2, 1993, p. 1, italics added.) Moses requests that we take judicial notice of this item of the legislative history; we grant the request. He also requests that we take judicial notice of certain materials concerning unrelated proposed legislation; because such materials have little relevance to a material issue in this matter, we deny the request. (See
 
 Mangini
 
 v.
 
 R. J. Reynolds Tobacco Co.
 
 (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358; 875 P.2d 73] [matter to be judicially noticed must be relevant to a material issue].) Amici curiae The Impact Fund et al. request us to take judicial notice of matters reflected in several specified documents, including analysis of proposed legislation and a report by the State Bar Access to Justice Working Group, which they claim are related to the issue whether California attorney fees law authorizes payment for contingent risk in order to provide an incentive for private attorneys to prosecute public interest cases. Because the materials are relevant to a material issue in this case, we grant the request.
 

 [2]
 

 Burlington
 
 v.
 
 Dague, supra,
 
 505 U.S. 557, addressed a fee-shifting provision under two federal environmental protection statutes. Significantly, the federal courts have not applied the rationale of the majority in
 
 Dague
 
 to other types of cases involving contingent attorney fees. (See, e.g.,
 
 In re Washington Public Power Supply Sys. Lit.
 
 (9th Cir. 1994) 19 F.3d 1291, 1298
 
 [Dague
 
 does not operate to bar risk fee enhancements in common fund cases].)
 

 [3]
 

 The “pooling” argument is theoretical at best: we have no basis for concluding that defendant’s attorneys intended to use their fees to make up for losses in other, unsuccessful anti-SLAPP cases. In principle, however, any such “pooling” by individual attorneys would be no different from what takes place in the private legal market for contingency matters and would thus not be inconsistent with the aim of compensating attorneys at the fair market value for their services as an inducement to accepting such matters.
 

 [4]
 

 Moses entered a contingent fee arrangement under which counsel would receive no attorney fees in the event the anti-SLAPP motion failed; counsel indicated that, absent a contingent fee arrangement, he would not have agreed to representation because of Moses’s inability to pay hourly fees. When a SLAPP defendant is not impecunious, it seems unlikely that an attorney would accept such representation, involving the risk of complete nonpayment if the anti-SLAPP motion failed. When an attorney is compelled to receive fees, if at all,
 
 *1140
 
 subject to a contingent risk, a contingent risk enhancement may be appropriate under Code of Civil Procedure section 425.16, subdivision (c); when an attorney is not so compelled, such an enhancement may pose difficult policy issues. We need not, and do not, decide the point here.
 

 [5]
 

 Ketchum urges that the superior court erred in denying his belated motion to reconsider the fee award. Even if Ketchum was unaware of the SLAPP litigation until April 1996—a fact disputed by Moses—Ketchum offered no satisfactory explanation of why he failed to produce the evidence of this until September 1996. The motion was rejected by the superior court and the Court of Appeal affirmed. Even assuming that the order denying the motion was appealable (see
 
 Alioto Fish Co. v. Alioto
 
 (1994) 27 Cal.App.4th 1669, 1679 [34 Cal.Rptr.2d 244] [noting a split of authority on the appealability of an order denying reconsideration]), we see no reason to second-guess the conclusion of the superior court concerning these points, which turn on questions of credibility and timeliness.
 

 [6]
 

 Ketchum also asserts that Code of Civil Procedure section 685.040 precludes an award of “collection” fees. He is incorrect. The statute provides that attorney fees incurred in enforcement efforts “are not included in costs collectible under this title unless'otherwise provided by law.” Under its provisions, a litigant entitled to costs for successfully enforcing a judgment is entitled to costs, but not attorney fees
 
 unless there is some other legal basis for such an award.
 
 Because Code of Civil Procedure section 425.16, subdivision (c) provides a legal right to attorney fees, they are a permissible item of costs. (See also
 
 Downey Cares v. Downey Community Development Com., supra,
 
 196 Cal.App.3d at pp. 997-998 [court may award attorney fees, including a fee enhancement, for all time spent, including on fee-related issues].)