Filed 6/1/26  Davis v. AIDS Healthcare Foundation CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TAMMY DAVIS et al., | B348322 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20STCV08627) |
| v. | |
| AIDS HEALTHCARE FOUNDATION, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

Thomas A. Myers, Jonathan M. Eisenberg; Kim Riley Law, Andrew F. Kim and Rebecca J. Riley for Defendant and Appellant.

Kramer Brown Hui, Jennifer Kramer, Sam Brown and Sam Vega; Law Office of Annette Harings and Annette Haring for Plaintiffs and Respondents.

This is an appeal from an attorney fee order in a class action that settled after several years of contentious litigation. The trial court awarded the plaintiff class $2,274,000 in attorney fees, 40 percent less than the lodestar they requested. Defendant AIDS Healthcare Foundation (AHF) contends the trial court abused its discretion by not reducing the fee award further. Defendant argues that the court did not properly calculate and analyze the lodestar, scrutinize the reasonableness of counsel's hourly rates and billed time, make all warranted deductions, or apply the terms of the settlement. We find no abuse of discretion and affirm.

## BACKGROUND

### I. Parties

Defendant owns and operates the Madison Hotel, a single-room occupancy residential hotel in the Skid Row area of Los Angeles. Defendant rents rooms at the Madison at low cost to individuals with very low incomes. Plaintiffs, including named plaintiff Tammy Davis, were Madison tenants.

### II. Litigation

In March 2020, plaintiff Davis filed a class action complaint asserting seven causes of action against defendant. The parties immediately engaged in settlement discussions but were unable to resolve the matter. Plaintiff filed a first amended complaint in July 2020, and the operative second amended complaint in November 2020. The second amended complaint asserted four causes of action: "First Cause of Action for Violation of Civil Code

Section 1941.1, Second Cause of Action for Violation of Civil Code Section 1941.3, Third Cause of Action for Violation of Civil Code Section 1714, and Fourth Cause of Action for Violation of California Business & Professions Code Section 17200, et seq."

The ensuing litigation was extensive and contentious. The register of actions spans 138 pages and includes a cross-complaint against third parties; multiple discovery motions, including several seeking sanctions; motions for injunctions; motions to disqualify counsel on both sides; motions for class certification and decertification; and a motion for summary judgment. According to the parties' settlement agreement, plaintiffs "obtained, through formal and informal discovery, hundreds of thousands of documents, and [ ] also conducted dozens of depositions, spoke with approximately 150 Class Members, and hired experts who conducted site inspections of the Madison and the Madison's elevator."

In April 2022, the trial court granted class certification as to several alleged habitability issues in common areas of the Madison. Section 17200, and the following certified issues: plumbing problems in common areas and common bathrooms; electricity problems in common areas; elevator outages; unsanitary conditions in common areas; lack of locking mailboxes; lack of deadbolts, which was the subject of a specific subclass; lack of resident caretaker; and public nuisance based on these conditions.

## III. Settlement Agreement

The parties agreed to settle the action in September 2024. Pursuant to a written agreement, plaintiffs agreed to release their claims in exchange for defendant paying a gross monetary

settlement of $575,000 and performing various nonmonetary terms primarily related to the alleged habitability issues.

As most relevant here, the settlement agreement provided the following, beneath the heading "CLASS COUNSEL FEES AND LITIGATION EXPENSES":

"The Parties have not agreed to the amount of payment for Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment.  Instead, the parties have agreed that Class Counsel will file a separate motion seeking attorney's fees and allowable costs directly from the Court[.] AHF will not dispute that Plaintiff's Counsel have a right to fees and allowable costs, which right will be determined by the court, but AHF retains every argument on why the amount of fees and allowable costs claimed should be reduced."

"Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" were collectively defined elsewhere in the agreement as "the amounts allocated to Class Counsel, as determined by the Court's order on Class Counsel's Motion for Attorney's Fees and Costs heard at the Final Approval Hearing, for reimbursement of reasonable attorneys' fees and expenses, respectively, incurred to prosecute the Action."  The term "allowable costs" was not defined, and the settlement agreement did not cite Code of Civil Procedure section 1033.5, which enumerates generally allowable costs.

The trial court approved the settlement agreement in May 2025.

## IV. Motion for Attorney Fees and Litigation Expenses
### A. Motion

Plaintiffs filed a motion for attorney fees and litigation expenses pursuant to Code of Civil Procedure section 1021.5 in

4

February 2025.  They sought a lodestar of $3,675,730.75 for 4,734.3 hours of work completed through the filing of the motion and a 2.0 multiplier, for a total of $7,351,461.50.  Plaintiffs also requested estimated attorney fees of $113,550.00 for 115 hours of work they expected to perform subsequent to the motion's filing; they did not seek a multiplier on these fees.  Their total attorney fee request accordingly totaled $7,465,011.50.

Plaintiffs also sought an "award of Litigation Expenses" to reimburse expenditures in 12 categories, including court reporter fees, mediation, discovery software, expert fees, client transportation, and trial equipment.  The requested expenses totaled $272,931.03.  Plaintiffs additionally asked the court to order defendant to reimburse the court for their waived filing fees in the amount of $7,883.50.

Plaintiffs' lead attorneys, Annette Harings and Jennifer Kramer, each filed a declaration in support of the motion. Kramer attached approximately 150 pages of timesheets and 10 pages of expense logs to her declaration.  Plaintiffs also filed several declarations from attorneys not involved in the case. Those declarants generally opined that plaintiffs' counsels' hourly rates, which ranged from $395 to $1,210, were reasonable and within market range.  Two of the declarants further opined that the requested 2.0 multiplier was reasonable and necessary to ensure a fully compensatory fee.

### B.    Opposition

Defendant opposed the motion.  It argued that plaintiffs should not recover fees for any work performed after June 2020, because their counsel was the cause of the breakdown in settlement negotiations.  Defendant alternatively argued that plaintiffs' lodestar should be reduced by 90 percent "or

5

disregarded entirely" for a variety of reasons, including "lack of experience, limited success, over-litigating, overbilling, unreasonable hourly rates, and lack of civility."

Defendant also challenged plaintiffs' request for litigation expenses. Defendant argued that it "never agreed to pay Plaintiffs' 'litigation expenses,'" and instead agreed only to pay "allowable" costs as set forth in Code of Civil Procedure section 1033.5. Using the statute as a guide, defendant argued that plaintiffs' "expenses" included "$163,522.45 in costs that are not allowable under California law," namely the categories of expenditures listed above.

Defendant filed numerous declarations in support of its opposition, from people involved in the matter and from outside attorneys. The declarants generally offered testimony and opinion regarding the parties' early settlement efforts and plaintiffs' counsels' lack of civility, efficiency, and efficacy. One declarant, a fee arbitrator, opined that plaintiffs' counsels misallocated administrative tasks and billed excessive time at excessive rates; another opined their bills were "vague and ambiguous." Defendant also filed detailed objections to plaintiffs' declarations.

### C. Reply and Surreply

Plaintiffs filed a reply, accompanied by additional declarations from Harings and Kramer, multiple exhibits, and objections to defendant's declarations. They also filed objections to defendant's opposition evidence. Defendant subsequently filed a surreply, along with objections to plaintiffs' new declarations and a new declaration of its own.

### D. Hearing and Ruling

The trial court heard the fee motion on May 8, 2025. At the conclusion of the hearing, the court remarked that it had over 40 years of collective experience as a member of the bar and bench and consequently was "intimately familiar with the market for legal services" in the Los Angeles area. It further stated that it was "familiar with the nature of the issue [*sic*] to be litigated and the way in which they were litigated," because it had supervised the case "for over 36 months."

The court subsequently issued a written order granting the motion in part. In the order, it reiterated its familiarity "with the tangled, mutually argumentative, and inefficient progress" of the case, as well as "the twists and turns" that happened when the matter was before another judge. It found that the "hostility between counsel" was "an instance of 'mutual combat,'" inasmuch as "defense counsel have greatly complicated Plaintiff's tasks by its own strategic and tactical choices, greatly increasing the time required for Plaintiff and her counsel to vindicate significant habitability shortcomings" at the Madison. The court also found, however, that plaintiffs "did not prevail on many of the legal and factual theories contained in the pleading," including "a potentially high exposure claim under Civil Code § 1942.6," and failed to obtain class certification on "many theories of liability." On the other hand, the court was "not persuaded that any kind of definitive settlement was in hand in 2020 as between Plaintiff Davis, her counsel, and Defendant and its counsel as then comprised," particularly in light of the "troubles in bringing this tentative settlement over the finish line" years later. The court further found that the breakdown of the initial settlement

negotiations marked "the start of a long course of mutual incivility."

The court continued: "Since the Court is going to exercise its discretion to (1) deny a requested multiplier to the fee award, (2) reduce the award due to incivility by 12% as to the portion allocable to Law Offices of Annette Harings and 6% as to the portion allocable to Kramer Brown Hui LLP (though greater reductions for either firm could be justified), (3) reduce the award due to Plaintiff's failure on many of the theories of liability originally pursued for class recovery by 18% (though a greater reduction could be justified), and (4) reduce the award due to the inefficiency in which Plaintiff's counsel litigated the case due to overstaffing, especially at court hearings and status conferences, by 10% as to the portion allocable to Law Offices of Annette Harings and 16% as to the portion allocable to Kramer Brown Hui LLP (though greater reductions for either firm could be justified) (for a total aggregate reduction of 40% as to each such firm), the Court will go gentle on the lodestar request, as such, as a starting point. Since this case has been pending for five years and Plaintiff's counsel are waiting for their money, the Court is prepared to accept the billing rates sought to cover the entire period, but not to endorse to other courts the rates as justified, but simply to use them as a basis for somewhat [*sic*] crude, but necessary, math exercise. The lodestar for all hours is $3,789,280.75 ($3,675,730.75 to Feb. 13, 2025, plus $113,550.00 post Feb. 13, 2025). Applying the 40% reduction determined above, the 60% net award is (rounded to the nearest thousand dollars) $2,274,000, of this $1,227,960 (54%) to Kramer Brown Hui LLP and $1,046,040 (46%) to Law Offices of Annette Harings."

8

The court then turned to plaintiffs' request for "expenses." It found that the settlement agreement permitted plaintiffs to seek only "allowable costs," which "is a term of art and not the same as 'litigation expenses,'" the term used "in introductory language to this section and its header before Plaintiff's counsel's rights are actually stated." The court accordingly adopted defendant's position and awarded plaintiffs costs of $117,292.08, inclusive of previously waived filing fees. It then noted that its "downward adjustment of the attorney fee award was made mindful of the semantic trap which Defendant may have set for Plaintiff's counsel regarding 'allowable cost' given the particular phrasing used (indirect evidence of the 'mutual combat' of incivility which has characterized this case to this very moment). In simple terms, the loss here is made up by a less exacting downward adjustment of the lodestar; the loss here is equal what otherwise easily could be a further 7% reduction of the lodestar, which is a matter subject to the Court's broad discretion based on its close experience with the litigation history here and the value of legal services in this market[.]"

Defendant timely appealed.

## DISCUSSION

### I. Legal Standards

"The fundamental approach for an award of attorney fees is the lodestar method." (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1051.) "Using that method, the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account." (*Chavez v. City of Los Angeles* (2010) 47

9

Cal.4th 970, 985.)  Those factors include "(1) the novelty of and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*)), and (5) civility, which is an aspect of skill.  (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747.)  The purpose of the adjustments is to "fix a fee at the fair market value for the particular action."  (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.)  "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."  (*Ibid.*)

In making that determination, the trial court must perform at least some analysis; it may not merely "rubberstamp" a request for fees.  (*Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 921 (*Snoeck*).)  However, it is not required to issue a statement of decision (*Ketchum*, *supra*, 24 Cal.4th at p. 1140) or make specific findings as to every charge (*Snoeck*, *supra*, 96 Cal.App.5th at p. 921).  The trial court thus may make an across-the-board percentage cut to the lodestar figure, though it must "'clearly explain its reasons for choosing the particular negative multiplier that it chose.'"  (*Snoeck*, *supra*, at p. 921 quoting *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 41.)

We review attorney fee orders for abuse of discretion.  (*Snoeck*, *supra*, 96 Cal.App.5th at p. 921.)  "The '"experienced trial judge is the best judge of the value of professional services rendered in his court, and while his [or her] judgment is of course

10

subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.""" (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.) We presume the trial court considered all relevant factors when making its award, even if they are not expressly discussed in the written ruling. (*Snoeck*, *supra*, 96 Cal.App.5th at p. 921.) As in all appeals, the appellant bears the burden of showing error. (See *Ketchum*, *supra*, 24 Cal.4th at p. 1141.)

## II. Analysis

### A. Lodestar Calculation and Analysis

Defendant contends the trial court erred from the outset by failing to "make an independent, careful calculation of the lodestar." Instead, defendant argues, the court "got the established process exactly backwards" by making "case-specific additions or reductions" first, and then relying upon those adjustments "as a basis to not engage in the required lodestar analysis." We are not persuaded. Although the court summarized its adjustments prior to stating the lodestar, it calculated the figure as prescribed by multiplying the number of hours it deemed reasonable by the billing rates it deemed reasonable. The court's statement that it would "go gentle on the lodestar request, as such, as a starting point" does not demonstrate the contrary. Rather than reducing the number of hours included at the lodestar stage, the court went "gentle" there and accounted for inefficiency by applying substantial percentage reductions to the lodestar. It was within its discretion to take that approach, which avoided duplicative reductions. (See *Ketchum*, *supra*, 24 Cal.4th at p. 1138 ["when determining the appropriate enhancement, a trial court should not consider these

11

factors to the extent they are already encompassed within the lodestar"].)

We are equally unpersuaded by defendant's contention that the court abused its discretion by "arbitrarily accepting without evaluating the reasonableness of the number of hours … in the lodestar calculation." Plaintiffs' hours were supported by billing records and declarations, to which the court implicitly overruled defendant's objections. We presume the court considered these documents. (See *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 980.) The court's incorporation of those documented hours into the initial lodestar accordingly was not arbitrary. Defendant asserts that plaintiffs achieved only limited success even though they "ran up the hours" in a variety of ways, and the lodestar should have reflected these infirmities. The court expressly made appreciable percentage reductions to the fee award for both inefficiency (10%, 16%) and limited success (18%). This is an acceptable accounting method. (See *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 100 ["Instead of calculating a total number of excessive hours, the trial court might have applied a negative multiplier."].)

Defendant also challenges the other component of the lodestar, the reasonable compensation for time expended. Improperly citing an unpublished trial court opinion, defendant contends the court failed to determine whether the billed rates were within the range of reasonable rates charged by comparable attorneys for comparable work. Defendant asserts the hourly rates were "shockingly high," and points to one of the declarations it submitted in opposition to the motion. However, plaintiffs submitted multiple declarations attesting to the reasonableness of their rates, and the trial court additionally

12

cited its decades of experience with the local market. It was not an abuse of discretion or demonstration of prejudice for the court to rely on these sources rather than those presented by defendant.

The trial court also explained that it considered that "this case has been pending for five years" in determining the hourly rates. The court was permitted to consider the contingency nature of the fee award (*Ketchum*, *supra*, 24 Cal.4th at p. 1132), and "delayed payment" is part of that risk (*id.* at p. 1136) because "payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 584).

We reject defendant's contention that the court "relied on *only one factor*," the delay in payment to plaintiffs' counsel, when assessing the reasonableness of the billed rates. The trial court also noted its forty years of experience and familiarity with the Los Angeles legal market. Moreover, we presume the trial court considered all relevant factors when making its award, even if it did not expressly mention them in the written ruling. (*Snoeck*, *supra*, 96 Cal.App.5th at p. 921.)

### B.     Failure to Make Greater Reductions

At several points in its written order, the court parenthetically observed that greater percentage reductions to the fee award "could be justified." Defendant contends the court abused its discretion by failing to make these reductions. We disagree.

The court has "considerable discretion to award reasonable attorney fees." (*Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 101.) Determining the precise percentage

13

by which to reduce or increase an award lies squarely within that discretion. The court's consideration and ultimate rejection of further reductions in this case evinces a thoughtful exercise of discretion, not an abuse of it. Moreover, the court did not find further reductions *were* justified, only that they *could be* justified. It did not abuse its discretion by ultimately concluding further reductions were unwarranted under all the circumstances of the case.

**C.      Alleged Punishment of Defendant and Revision of Settlement Agreement**

In its award of costs, the court accepted defendant's "well argued" position that the cost provision of the settlement agreement authorized only an award of costs "allowable" by Code of Civil Procedure section 1033.5 rather than a more expansive universe of "litigation expenses." The court limited plaintiffs' cost recovery accordingly. Yet, it also characterized the cost provision as a "semantic trap which Defendant may have set for Plaintiff's counsel" by using more restrictive language in the provision than in the accompanying "introductory language" and "header." To account for this "indirect evidence of the 'mutual combat' of incivility," the court made a "less exacting downward adjustment" of the lodestar than it otherwise might have.

Defendant takes umbrage at the court's characterization of the provision as a possible "semantic trap" and "mutual combat," and contends the court prejudicially "punished" defendant and impermissibly rewrote the settlement agreement by "including disallowed costs in the attorney fee portion of the award." We find no abuse of discretion in either the characterization or the award.

14

The voluminous record before this court amply supports the trial court's observation that the litigation of this case was "tangled, mutually argumentative, [ ] inefficient," and mutually combative. "Seasoning a disagreement with avoidable irritants can turn a minor conflict into a costly and protracted war" (*Karton v. Ari Design & Construction, Inc.*, *supra*, 61 Cal.App.5th at p. 747), and that is precisely what happened here. Counsel's interpersonal conflicts and tensions spilled over into scorched earth litigation tactics. The court's use of the phrase "mutual combat" was an apt indictment of both sides, not an insult directed solely at defendant.[1]

Defendant asserts it is not a "semantic trap" to use boilerplate language in a costs provision, and suggests the court punished it based on mere speculation. The court accurately recognized, however, that the provision said one thing and language elsewhere in the agreement, including the provision's heading, said another. The court nevertheless adopted defendant's interpretation of the agreement and awarded plaintiffs less than half their requested expenses in accordance with that interpretation. This is not indicative of punishment to or passion and prejudice against defendant.

The court's "less exacting" approach to the lodestar was also permissible. As discussed above, refining and adjusting a fee award to fit the circumstances of the case is quintessentially discretionary. The court explained the reasoning behind its

---

[1] In their respondent's brief, plaintiffs alluded to a 2022 hearing at which the trial court stated that defendant engaged in "sort of cowboy behavior" by approaching represented class members. In its reply brief, defendant suggests this was further evidence of the court's "passion and prejudice" against defendant.

15

percentage reduction, and that reasoning finds support in the record.  The court did not abuse its broad discretion or evince bias against defendant by taking the costs award into consideration when fashioning the fee award.

We are also not persuaded that the trial court impermissibly rewrote the settlement agreement.  Defendant is correct that a court may not revise a settlement agreement (see *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 539) or rewrite by construction an unambiguous contract.  (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 923.)  The court did not delete, modify, or otherwise alter the terms of the agreement regarding costs by declining to further reduce the lodestar.  It recognized an ambiguity between the narrow language of the costs provision and the broader meaning of the defined term "Class Counsel Litigation Expenses Payment."  Under these circumstances, the court acted within its broad discretion.

### DISPOSITION

The order is affirmed.  Plaintiffs may recover their costs of appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COGLIATI, J.[*]

We concur:

MORI, ACTING P. J.                                    TAMZARIAN, J.

---

[*]      Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16