Filed 6/27/14  Camargo v. Triumph Motorcycles CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PABLO A. CAMARGO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TRIUMPH MOTORCYCLES (AMERICA) LTD.,<br><br>    Defendant and Respondent. | H039172<br>(Santa Clara County<br>Super. Ct. No. 110CV182797) |

The Supreme Court has repeatedly confirmed that "[t]he ' "experienced trial judge is the best judge of the value of professional services rendered in [] court, and while [that] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*), quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 (*Serrano III*).)  In this appeal, plaintiff Pablo A. Camargo claims the trial court erred in reducing the amount of attorney's fees, costs, and expenses plaintiff requested from defendant Triumph Motorcycles (America) Ltd. after the parties settled plaintiff's Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790, et seq.)[1] "lemon law" complaint related to a motorcycle he purchased from defendant.  For the reasons stated here, we will affirm the order.

---

[1]  Unspecified statutory references are to the Civil Code.

## I.    TRIAL COURT PROCEEDINGS

The information in this section is derived from plaintiff's first amended complaint (FAC) as well as exhibits to various declarations of counsel for both parties contained in the appellant's appendix.

In September 2007, plaintiff purchased a used Triumph Bonneville motorcycle from California BMW Triumph (dealer) for a total of $8,543.68.  The dealer provided plaintiff a two-year express written warranty covering parts and labor, which extended from the date of purchase until September 2009.

According to the FAC, plaintiff began to experience problems with the motorcycle shortly after purchase.  Plaintiff had trouble starting the motorcycle and on one occasion the engine "abruptly" turned off while plaintiff was driving on the freeway.  After each breakdown, plaintiff took the motorcycle to the dealer and the dealer's employees repaired the motorcycle and returned it to plaintiff.  The last service on the motorcycle performed by the dealer during the warranty period occurred in October 2008.

Over a year later, in April 2010 plaintiff returned the motorcycle to the dealer because the motorcycle turned off unexpectedly.  The dealer informed plaintiff that because the two-year warranty had expired plaintiff would have to pay for any maintenance or repairs.  In May 2010, plaintiff retained counsel and sent a demand letter to the dealer and defendant, claiming that the problem with the motorcycle that caused him to bring it in for service in April 2010 was caused by the same defect as his previous service appointments.  Because defendant had not fixed the motorcycle in a reasonable number of attempts during the warranty period, plaintiff claimed defendant "breached its express warranty," entitling plaintiff to monetary restitution under section 1792.2, subdivision (b).  Plaintiff demanded either a refund of the purchase price of the motorcycle or a "reasonably equivalent" motorcycle with a new warranty.

Defendant denied responsibility and plaintiff (now represented by a different attorney, Anthony Sperber) sent a second demand letter requesting restitution and stating

that the letter "serves as a preliminary notice and demand for corrective action pursuant to the provisions of California Civil Code section 1782 … ." In response to this second demand, defendant maintained that plaintiff was responsible for any after-warranty repair fees but offered "a goodwill claim for parts only … ."

Plaintiff responded by filing a complaint against defendant in September 2010, alleging breaches of both express and implied warranties as well as failure to make timely repairs or restitution. (Citing §§ 1794; 1791.1; 1793.2, subd. (b); 1793.2, subd. (d).) Beginning in October 2010, two attorneys (Mr. Sperber and Arthur Obolsky) worked on plaintiff's case.

On February 1, 2011, defendant offered to settle the lawsuit by paying plaintiff "the Kelly Blue Book value of $4,500 plus $500 in attorney's fees." Plaintiff rejected this offer by letter dated February 4, 2011, claiming plaintiff's fees and costs at that point were "something in the neighborhood of $20,000." Later that month defendant made a second settlement offer of $5,500 for the motorcycle and $1,500 in attorney's fees, which plaintiff also rejected. Over the next several months the parties exchanged more letters regarding settlement, with defendant's offers remaining relatively similar and plaintiff's demands increasing due to attorney time expended on the case.

A mediation apparently occurred in May 2011 but was not successful.[2] In July 2011, plaintiff filed the FAC, which alleged additional facts and the same causes of action as the original complaint. For the remainder of 2011 and the first half of 2012, plaintiff sought discovery from defendant and filed several motions to compel responses when defendant failed to provide all documents requested. Some of the motions were granted and in at least one instance plaintiff recovered monetary sanctions from defendant after the trial court found that defendant's opposition was not substantially justified. During this period plaintiff also briefed and argued a motion for summary

---

[2] The only record of the mediation in the appellant's appendix is a statement by plaintiff's counsel in a declaration filed in the trial court.

judgment and summary adjudication, which the trial court denied in February 2012.  In June 2012, to help Mr. Sperber and Mr. Obolsky prepare for trial, plaintiff retained two additional attorneys, Scott Kaufman and Kevin Faulk.

The parties eventually settled the liability portion of the case in August 2012.  Though the settlement agreement is not part of the record on appeal, the parties agree that plaintiff was deemed the prevailing party, defendant agreed to pay plaintiff $12,000 in damages, and the parties agreed to litigate attorney's fees and costs by noticed motion.  Plaintiff filed a cost memorandum under section 1794, subdivision (d), requesting a total of $18,756.75, which included expert witness fees of $4,900 as well as various "other" fees totaling $5,336.61.  Defendant responded with a motion to tax costs, noting that section 1794, subdivision (d) only allows recovery of costs "reasonably incurred" and arguing that some costs claimed by plaintiff were unreasonable.  Plaintiff opposed the motion and filed supporting exhibits to document the costs.

Plaintiff also filed a motion for attorney's fees under section 1794, subdivision (d), seeking a total of $291,521.25, supported by declarations and exhibits from counsel, and broken down as follows:

| Attorney's Fees Requested | |
| --- | --- |
| Anthony Sperber ($350-$390/hr x 242.7 hours) | $90,786.50 |
| Arthur Obolsky ($275/hr x 297.1 hours) | $81,702.50 |
| Scott Kaufman ($475/hr x 36.8 hours) | $17,480.00 |
| Kevin Faulk ($425/hr x 33.3 hours) | $14,152.50 |
| Sub-total | $204,121.50 |
| Voluntary reduction of time claimed by Sperber and Obolsky | - $17,574.00 |
| Attorney's fee estimate for reply (Sperber $390/hr x 20) | $7,800.00 |
| Lodestar Total | $194,347.50 |
| Total Requested (lodestar x 1.5 multiplier) | $291,521.25 |

In opposition, defendant argued plaintiff's request was unreasonable, excessive, and the result of plaintiff's overlitigation of the case. Defendant included a line-by-line analysis of the billing slips proffered by plaintiff that contested several entries. At the September 2012 hearing on plaintiff's fee motion and defendant's motion to tax costs, the trial court stated while it did "not challenge the hourly rates" claimed by counsel for plaintiff, it found the number of hours claimed unreasonable. In explaining its decision, the court stated that plaintiff's request was, "to put it bluntly, … outrageous." The court "felt this case was over litigated … [and] driven by attorney's fees." Finally, the court refused plaintiff's counsel's request for "a line by line striking out … of the items that the Court thought were over litigated."

In November 2012 the trial court signed proposed orders lodged by defendant regarding costs and fees. The trial court granted in part defendant's motion to tax costs, taxing the following items from plaintiff's cost memorandum: expert witness fees ($930.16); postage fees ($147.50); law and motion hearing transcript ($51.50); photocopies ($343.85); parking and mileage to attend hearings ($882.91); mock trial ($400); mediation ($1,500); and private investigator ($200). Regarding attorney's fees, the trial court awarded plaintiff $61,236.45, broken down as follows:

| Attorney's Fees Awarded | |
|---|---|
| Anthony Sperber | $27,235.95 |
| Arthur Obolsky | $24,510.75 |
| Scott Kaufman | $5,244.00 |
| Kevin Faulk | $4,245.75 |
| Total Fees Awarded | $61,236.45 |

Plaintiff timely appealed.

## II.    DISCUSSION

Plaintiff claims the trial court erred by reducing the amount of attorney's fees awarded and by granting in part defendant's motion to tax costs.

## A. ATTORNEY'S FEES

Prevailing parties in lemon law cases "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (§ 1794, subd. (d).) We review a trial court's award of attorney's fees for abuse of discretion. (*Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 452.) This standard involves determining "whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria." (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831.) In the attorney's fees context, " 'the exercise of that discretion must be based on the lodestar adjustment method.' " (*Ketchum, supra,* 24 Cal.4th at p. 1134, quoting *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322.)

The "lodestar" consists of the number of hours reasonably expended on a case multiplied by a reasonable hourly rate. (*Ketchum, supra,* 24 Cal.4th at p. 1134.) In determining the reasonableness of a request, "trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Id.* at p. 1132.) Once a court determines the lodestar, "it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ibid.*) These adjustments help to "fix a fee at the fair market value for the particular action." (*Ibid.*)

Regarding the amount of specificity required in a trial court's order awarding attorney's fees, a different panel of this court has noted "where the award corresponds to either the lodestar amount, some multiple of that amount, or some fraction requested by

one of the parties, the court's rationale for its award may be apparent on the face of the record, without express acknowledgment by the court of the lodestar amount or method. … A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 (*Gorman*).) On appeal, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*Ketchum, supra,* 24 Cal.4th at p. 1140.) Finally, it bears repeating that "[t]he ' "experienced trial judge is the best judge of the value of professional services rendered" ' " and the determination will not be disturbed on appeal unless it is clearly wrong. (*Ketchum, supra,* at p. 1132, quoting *Serrano III, supra,* 20 Cal.3d at p. 49.)

Plaintiff asks us not to follow *Gorman* and instead to adopt an approach purportedly used in federal court that requires trial courts to "show their work when calculating attorney's fees." (Quoting *Padgett v. Loventhal* (2013) 706 F.3d 1205, 1208.) But we are satisfied that *Gorman's* discussion of the specificity required by trial courts reflects the established law in California. (See, e.g., *Ketchum, supra,* 24 Cal.4th at pp. 1140-1141 [noting the trial court need not issue a statement of decision on fee motion and error must be affirmatively shown]; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 874 [same]; *Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 290 ["the trial court was not required to provide a detailed explanation of how it arrived at the fee award amount absent a request for a statement of decision."].) Plaintiff did not request a statement of decision under Code of Civil Procedure section 632, nor does he claim on appeal that counsel's request for a line-by-

line breakdown of the items the court thought were overlitigated should be construed as such a request.[3]

Plaintiff argues that the trial court's award "is not a clear 'fraction' " of the fees plaintiff requested. However, our review of the record indicates the trial court began with a starting amount of requested fees, discounted that amount by a precise percentage, and awarded plaintiff the resulting amount. The trial court apparently used the amount of fees claimed for each attorney listed in the chart on page eight of plaintiff's fee motion as its starting point and then awarded plaintiff 30 percent of each of the claimed amounts:

=

| Attorney's Fees Comparison | | |
|---|---|---|
| | Requested | Awarded |
| Anthony Sperber | $90,786.50 | $27,235.95 |
| Arthur Obolsky | $81,702.50 | $24,510.75 |
| Scott Kaufman | $17,480.00 | $5,244.00 |
| Kevin Faulk | $14,152.50 | $4,245.75 |
| Total | $204,121.50 | $61,236.45 |

Plaintiff further argues that the court's award "cannot stand" because the starting point used by the trial court did not include the $7,800 in attorney's fees plaintiff estimated would be necessary to complete a reply memorandum and attend the hearing on the fee motion. This is a distinction without a difference because the trial court's starting point included $17,574 in attorney's fees that plaintiff intended to voluntarily

---

[3] We also note that it is doubtful a hearing on a motion requesting attorney's fees qualifies as a "trial" for purposes of Code of Civil Procedure section 632, calling into question whether even a timely request for a statement of decision would require a trial court to explain its reasoning in greater detail. (*Gorman, supra,* 178 Cal.App.4th at p. 58 ["Plaintiffs assert that the hearing on their motion for attorney fees in this case qualifies as a 'trial' under [Code Civ. Proc., §] 632. The California Supreme Court has indicated otherwise in two cases."]; see also *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 ["[W]e have discovered no case requiring a statement of decision for an order on a motion for attorney fees."].)

omit from the fee motion. Thus, the starting point used by the trial court was actually *higher* than that claimed by plaintiff.

Plaintiff claims that the court abused its discretion by reducing his request by 70 percent, arguing that rather than use the lodestar method the court improperly "tethered" the amount of fees it awarded to the underlying recovery of $12,000 and "lumped this case in with its preconception of Lemon Law cases" generally. Trial courts should calculate fee awards using the lodestar method "based on actual time expended, rather than a percentage of the recovery, so that pursuit of consumer warranty cases [is] economically feasible." (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 820.) However, the lodestar method only compensates attorneys for "the number of hours *reasonably* expended … ." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095, italics added.)

Here, the trial court found the hours claimed by plaintiff's attorneys were unreasonable and the total amount requested was "outrageous." The court explained that it "felt this case was over litigated." In the signed order awarding attorney's fees, the court repeated the "general observation that plaintiff over litigated this case." We note that despite the relatively straightforward nature of the underlying case, plaintiff engaged in extensive discovery, and a total of four attorneys prepared the case for trial. Further, plaintiff chose to pursue a motion for summary judgment and summary adjudication even though it was apparent that the main issue in the case derived from a factual dispute. The trial court's overlitigation finding is supported by this record, and we find the court acted "within the permissible range of options set by the legal criteria" in reducing plaintiff's fee award. (*Department of Parks & Recreation, supra,* 233 Cal.App.3d at p. 831.)

## B. COSTS

Plaintiff claims the trial court erred in partially granting defendant's motion to tax plaintiff's costs.

Because section 1794, subdivision (d) allows for the recovery of "costs *and* expenses," the court of appeal in *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, held that section 1794, subdivision (d) allows prevailing plaintiffs to recover not only the costs specified in Code of Civil Procedure section 1033.5, but also other "expenses" like expert witness fees that would not otherwise be recoverable. (*Jensen, supra,* at p. 138.) However, that court stressed that section 1794 only entitles plaintiffs to costs and expenses that are " 'reasonably incurred … .' (§ 1794, subd. (d).)" (*Jensen, supra,* at p. 138.) We "review the trial court's order taxing costs under the abuse of discretion standard." (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 813.)

Plaintiff contends that the trial court abused its discretion by awarding only those costs allowed by Code of Civil Procedure section 1033.5, but the record does not support his argument. Although the order taxing costs does not explicitly state the court's reasoning, both the order on plaintiff's request for attorney's fees and the court's statements at the hearing on costs and fees make clear the court's finding that plaintiff's requests were unreasonable because "plaintiff over litigated this case."

The record supports the conclusion that the trial court taxed plaintiff's costs because it found they were not "reasonably incurred" rather than because it misunderstood the scope of costs recoverable by a prevailing plaintiff under section 1794, subdivision (d). Of the $18,756.75 requested, the court awarded $14,300.83, including almost $4,000 in expert witness fees. Had the court applied Code of Civil Procedure section 1033.5, it would not have awarded any expert witness fees since that section only allows recovery of "[f]ees of expert witnesses ordered by the court" and there was no such order in this case. (Code Civ. Proc., § 1033.5, subd. (a)(8).)

Plaintiff also takes issue with the trial court's reduction of the amount of expert witness fees by $930.16, claiming that amount "has no support in the record." To the contrary, review of the evidence plaintiff submitted in opposition to defendant's motion

to tax costs shows that while plaintiff's cost memorandum claimed $4,400 in expert witness fees for Russell Darnell, the only invoice produced for Darnell's services was for $3,469.84.  Because $4,400 minus $3,469.84 is $930.16, it appears the trial court carefully reviewed the evidence submitted by plaintiff and awarded the expert witness fees for which plaintiff provided supporting evidence.

The remaining $3,525.76 in costs taxed by the trial court were all in the category of "other" costs claimed by plaintiff and included: postage fees; transcription of one law and motion hearing; photocopies; parking and mileage to attend hearings; a mock trial; a mediation; and a private investigator.  The trial court apparently found these costs were not reasonably incurred.  Plaintiff has not carried his burden of affirmatively showing that the trial court erred in taxing these costs, (*Ketchum, supra,* 24 Cal.4th at p. 1140), and we find no abuse of discretion.[4]

### III.    DISPOSITION

The orders on plaintiff's motion for attorney's fees and defendant's motion to tax costs are affirmed.

---

[4]  Our review of the record discloses a minor computational error related to costs that plaintiff did not raise before the trial court or on appeal.  The trial court taxed law and motion hearing transcription costs of $51.50 when plaintiff only claimed $51.00 for this transcript.  However, because plaintiff forfeited this argument by never objecting, (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881), and in the interest of judicial economy (see § 3533 ["[t]he law disregards trifles"]), we will not disturb the court's order.  (See *Sime v. Hunter* (1921) 55 Cal.App. 157, 159-160 [applying maxim to disregard cost claim of 45 cents].)

                        _____

                        Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Mihara, J.