Filed 6/22/22  In re F.K. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re F.K., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  P.W. et al.,  Appellants. | E078090  (Super.Ct.No. J277043)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

The Justice Firm and Joseph Virgilio, for Appellants.

Tom Burton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

The juvenile court denied appellants', P.W. and T.W., (the maternal great-grandparents) Welfare and Institutions Code section 388[1] petition. On appeal, the maternal great-grandparents (MGGPs) contend the court erred in denying their section 388 petition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On February 10, 2017, personnel from the Sonoma County Family, Youth and Children's Services (Sonoma County Children Services) filed a petition alleging that S.K. and F.K. (the children) came within the juvenile court's jurisdiction pursuant to section 300, subdivisions (b)(1) and (j). (*S.K.*, *supra*, E074453.) On March 6, 2017, mother agreed to submit to jurisdiction, and the court sustained the allegations in the petition, as amended, as to F.K. (the minor). (*Ibid.*) On April 14, 2017, the juvenile court issued a protective custody warrant for S.K. because mother was uncooperative in

---

[1] All further statutory references are to the Welfare and Intuitions Code unless otherwise stated.

[2] The record on appeal consists solely of a clerk's transcript containing the MGGPs' section 388 petition and the order denying it, which appears wholly inadequate for appellate review. "[T]he reviewing court starts with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's affirmative burden to demonstrate otherwise." (*Cequel III Communications I, LLC, v. Local Agency Formation Com. of Nevada County* (2007) 149 Cal.App.4th 310, 329, fn. 7 (*Cequel*); see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141 (*Ketchum*) [It is the burden of the party challenging the court order to provide an adequate record to assess the purported error.].)
 However, the underlying dependency proceedings were the subject of at least six appeals, the opinions from which we have reviewed. We take judicial notice of the following relevant, nonpublished opinions: *In re S.K. et al.* (Oct. 20, 2020, E074453) [nonpub. opn.] (*S.K.*) and *In re F.K.* (May 31, 2019, A156346) [nonpub. opn.] (*F.K.*), from which we can derive a better understanding of the factual and procedural status of the instant case. (Evid. Code, § 459.)

2

allowing the assessment of S.K.'s health and had placed her in the care of the maternal great-grandmother and step great-grandfather, who reportedly were physically abusive. (*Ibid*.) "Two of the great-grandmother's daughters had reported that she was physically abusive to them and to a grandson. One of the great-grandmother's daughters had reported that the great-grandmother's husband had 'devised a peep hole in their bathroom and would observe her while she showered.' The great-grandmother and her husband had refused to cooperate with the social worker or provide any information about medical or dental examinations. The court issued the protective custody warrant on that same date." (*F.K.*, *supra*, A156346.)

By June 15, 2017, Sonoma County Children Services had amended the petition as to S.K. on two separate occasions, adding allegations that mother had failed to provide necessary dental and medical treatment, had temporarily placed the child with caretakers who had histories of child abuse, and had facilitated S.K. being passed around to relatives who had histories of child abuse or endangerment. (*S.K.*, *supra*, E074453.) The Sonoma County juvenile court declared the children dependents of the court, ordered their removal from parental custody, and ordered reunification services for mother only. (*Ibid*.) The children were placed with the maternal great-aunt. (*Ibid*.)

In June 2018, mother moved to San Bernardino County. (*S.K.*, *supra*, E074453.) On July 5, 2018, Sonoma County Children Services reported that S.K. was residing in a foster home and the minor was residing in a group home, the latter of which offered a residential treatment and education program. (*Ibid*.) Other relatives were being

3

considered as placement options.  The minor was doing well in his placement by actively participating in treatment groups and getting along well with the other residents.  (*Ibid*.)

On December 19, 2018, the Sonoma County juvenile court terminated mother's reunification services and set a section 366.26 hearing.  On January 3, 2019, the matter was transferred to San Bernardino County.  (*S.K.*, *supra*, E074453.)

According to the section 366.26 report filed September 5, 2019, the San Bernardino County Children and Family Services (the department) recommended the children continue their "out-of-home placement" and requested a permanent plan with the goal of adoption.  (*S.K.*, *supra*, E074453.)  It was noted that the minor "had nine change[s] in placement."  (*Ibid*.)  In the addendum report filed November 12, 2019, the social worker stated that "[a]t this time, adoption is not the appropriate plan, given the behaviors of the children."  (*Ibid*.)

At a hearing on November 14, 2019, all parties submitted on the recommendation. The court ordered a permanent plan with the identified goal of adoption.  (*S.K.*, *supra*, E074453.)

On October 28, 2021, the MGGPs filed a section 388 petition seeking placement of the minor.  As changed circumstances, the great-grandfather stated that he had "completed the R.F.A. [(Calif. Resource Family Approval Program)] process in my county.  I also do not believe the judge is aware of the ongoing efforts of my wife and myself put forth in getting placement of the minor.  I'm also now in a position where I can comfortably retire, freeing my time up to be spent with minor."  The great-grandfather contended the change would be in the minor's best interest because the minor

4

"would be in the home of his family. He would receive daily love and support. He would participate in individual outpatient therapy to address emotional and behavioral issues." The MGGPs attached 14 pages of exhibits.

In a quasi-declaration,[3] the MGGPs attested that parents' reunification services had been terminated, a section 366.26 hearing had been set, no other relatives had been identified for placement, the minor was stuck in a long-term foster care situation with uncertainty for future placement, the MGGPs had lived with and established a bond with the minor, the minor had expressed his desire to live with them, and they would help the minor maintain relationships with other family members.

The MGGPs contended that Sonoma County Children Services and the department had abused their discretion in failing to place the minor with them pursuant to section 361.3, subdivision (d). They maintained that they had been assessed and told to make "corrections." The MGGPs had subsequently made those corrections, but the department never placed the minor with them.

On November 1, 2021, the court denied the petition without holding an evidentiary hearing. The court checked the boxes on the form order reflecting that the MGGPS' request did not state new evidence or a change of circumstance and that the request was not in the minor's best interest. The court wrote in that "Sonoma County has previously ruled these relatives out."

---

[3] The document, although signed, is not under penalty of perjury.

## II. DISCUSSION

The MGGPs contend the court erred in denying their petition. We disagree.

"'Section 361.3 gives "preferential consideration" to a relative request for placement, which means "that the relative seeking placement shall be the first placement to be considered and investigated." [Citation.]' [Citation.] The intent of the Legislature is 'that relatives be assessed and considered favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child.'" (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719.)

"[W]hen a relative requests placement of the child *prior* to the dispositional hearing, and the Agency does not timely complete a relative home assessment as required by law, the relative requesting placement is entitled to a hearing under section 361.3 without having to file a section 388 petition." (*In re Isabella G.*, *supra*, 246 Cal.App.4th at p. 712, italics added.) However, the "law does not preclude the application of the relative placement preference *after* the reunification period, even when no new placement is necessary." (*Id*. at p. 723, italics added.)

"Under section 388, a [party] may petition to modify a prior order 'upon grounds of change of circumstance or new evidence.' [Citation.] The juvenile court shall order a hearing where 'it appears that the best interests of the child . . . may be promoted' by the new order. [Citation.] 'Thus, the [party] must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests.'" (*In re K.L.* (2016) 248 Cal.App.4th 52, 61.)

6

"'A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' [Citation.] In determining whether the petition makes the required showing, the court may consider the entire factual and procedural history of the case." (*In re K.L.*, *supra*, 248 Cal.App.4th at pp. 61-62 ["Mother did not make a prima facie showing the proposed modification—removing the children from their placements and placing them with Grandmother—would be in the children's best interests."].) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home . . . does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved of on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

"After the termination of reunification services . . . , the goal of family reunification is no longer paramount, and "'the focus shifts to the needs of the child for permanency and stability" [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child."'" (*In re K.L.*, *supra*, 248 Cal.App.4th at p. 62.) The rebuttable presumption that

foster care is in the child's best interest applies with even greater strength when adoption is the permanent plan. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460.)

"'Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.] The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

First, the MGGPs have failed their burden of proving changed circumstances, by failing to provide an adequate record. "[T]he reviewing court starts with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's affirmative burden to demonstrate otherwise." (*Cequel*, *supra*, 149 Cal.App.4th at p. 329, fn. 7; see *Ketchum*, *supra*, 24 Cal.4th at pp. 1140-1141 [It is the burden of the party challenging the court order to provide an adequate record to assess the purported error.].)

The MGGPs failed to provide us with a record that demonstrates how their circumstances have changed, e.g., what their circumstances were like before. The court below indicated that the Sonoma County Children Services had previously considered and rejected the placement of the minor with the MGGPs. The MGGPs do not contest this. However, the record does not reflect why the MGGPs had been previously rejected.

The MGGPs recite their purported attempts to gain placement of the minor from March 2017 through April 2020. The closest to a rejection to which the MGGPs refer is a notification by *the department* of needed "corrections" before which *the department*

8

would not consider the placement of the minor with the MGGPs. However, the court referred to a rejection by the Sonoma County Children Services, not the department. We have nothing, in the record provided by the MGGPS, which reflects why Sonoma County would have previously rejected the placement of the minor with the MGGPS.

Moreover, the department's notification of corrections is not a rejection. Indeed, the MGGPs really allege a failure of the department to respond to their efforts, rather than an express rejection. There is nothing in the record provided by the MGGPs to indicate why either the Sonoma County Children Services or the department would have *rejected* the placement of the minor with the MGGPs. Thus, there is nothing in the record to show that the MGGPs had changed their circumstances *since that rejection*.

Second, the MGGPs have failed their burden of proving, by providing an adequate record, that the proposed change of placement would be in the minor's best interest. "[T]he reviewing court starts with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's affirmative burden to demonstrate otherwise." (*Cequel*, *supra*, 149 Cal.App.4th at p. 329, fn. 7; see *Ketchum*, *supra*, 24 Cal.4th at pp. 1140-1141 [It is the burden of the party challenging the court order to provide an adequate record to assess the purported error.].)

The MGGPs have failed to provide a record that reflects the status of the minor as of the date of the court's order denying the section 388 petition. Indeed, the MGGPs fail to provide us a status of the minor's placements during the entirety of the proceedings. Even with the records of which we have taken judicial notice, the most current status of the minor that we have are reports from the department filed on September 5, 2019, and

9

November 12, 2019, approximately two years prior to the MGGPs filing their section 388 petition. (*S.K.*, *supra*, E074453.) There is simply no way we can determine, based upon this record, whether the court abused its discretion by declining to remove the minor from whatever placement he was then in and placing him with the MGGPs. Thus, there is no record to establish that the placement of the minor with the MGGPs was in the minor's best interest.

The MGGPs alleged that the minor "had 16 placement moves since the time of removal," and the minor was "stuck in long term foster care with uncertainty of future placement and possible future placement moves." That may be true. However, we have no record to establish anything other than that as of September 5, 2019, the minor had nine changes in placement and, as of November 12, 2019, adoption was no longer considered the permanent plan. (*S.K.*, *supra*, E074453.) However, that was nearly two years before the MGGPs filed their petition. The allegations in the MGGPs' petition do not overcome the rebuttable presumption that continued foster care is in the best interests of the minor. Thus, they cannot show that, as of the date of their petition, it was in the minor's best interest to remove him from wherever he had been last placed and place him with the MGGPS.

Third, from the records we have judicially noticed, we can infer the reason for the Sonoma County Children Services' rejection of the placement of the minor with the MGGPS. The Sonoma County juvenile court had declared the children and the minor dependents of the court and had removed them from their parents based, in part, on allegations that mother had temporarily placed the minor with the MGGPs, who had

10

histories of child abuse and child endangerment. (*S.K.*, *supra*, E074453.) The allegations specifically included that the MGGPs were physically abusive, and the step great-grandfather had "devised a peep hole" to watch his step great-grandchild shower. (*F.K.*, *supra*, A156346.) Thus, there was evidence before the Sonoma County juvenile court that the placement of the minor with the MGGPs was not in his best interest.

Fourth and finally, even if the court erred in failing to hold an evidentiary hearing on the section 388 petition, any error was harmless because the MGGPs "wholly fail[] to identify additional evidence [they] would have presented at an evidentiary hearing that would have established" a change of circumstances and that placement with them would have been in the minor's best interest. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1164.) The juvenile court acted within its discretion.

### III.  DISPOSITION

The juvenile court's order denying the section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                    J.

We concur:


RAMIREZ
              P. J.


SLOUGH
              J.

11