Filed 1/12/23  In re A.D. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | D080527 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. J.D., Defendant and Respondent, | (Super. Ct. No. EJ4607A) |

APPEAL from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant, J.D.

Marissa Coffey, under appointment by the Court of Appeal, for Respondent, J.K.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Dana Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

J.D. (Mother) appeals from juvenile court orders terminating dependency jurisdiction over her 5-year-old daughter, A.D., awarding joint legal custody to her and J.K. (Father), and primary physical custody to Father. She argues the juvenile court abused its discretion by awarding Father primary physical custody. She also asserts that substantial evidence does not support the court's implicit finding that A.D.'s best interests are promoted by primarily residing with Father.[1] We disagree with her contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Initiation of Dependency Proceedings*
*Through Post-Disposition Review Orders*

Mother suffers from a chronic illness that is managed through medication. She reported that after her chronic illness diagnosis, she did not use "substances" for approximately 15 to 16 years. Mother met Father and they dated for a several months before Mother became pregnant. Mother gave birth to A.D. in 2017. Father reported that Mother " 'vanished' " during the pregnancy but he later unexpectedly located her and infant A.D.

In 2018, Mother started using marijuana daily to help her sleep and increase her appetite. In 2019, she started using methamphetamines, reporting "that the stress of being a single parent may have triggered the use." During her heaviest usage, she used methamphetamines " 'a couple times a day.' " The San Diego County Health and Human Services Agency (the Agency) received three referrals for Mother between 2018 and 2020

---

[1] All parties agreed the juvenile court should terminate jurisdiction and this portion of the court's order is not at issue in this appeal.

regarding her methamphetamine use and the lack of proper care and supervision of A.D. Two referrals were deemed inconclusive and the other unfounded.

Mother became pregnant with H.D., stopped using methamphetamines at the beginning of her pregnancy but relapsed at some point during the pregnancy. Mother gave birth to H.D. in early 2021. H.D. had in utero drug exposure to methamphetamine and tetrahydrocannabinol (THC). Mother admitted smoking methamphetamines a few times a week, to a couple times per day, throughout the pregnancy but expressed no concern for H.D.'s development or health from her methamphetamine use while pregnant.

On February 22, 2021, the Agency filed a dependency petition on A.D.'s behalf pursuant to Welfare and Institutions Code[2] section 300, subdivision (b), alleging A.D. suffered or was at a substantial risk of harm as a result of Mother's excessive use of methamphetamine and marijuana.[3] At the detention hearing the following day, the juvenile court detained A.D. and allowed Mother supervised visitation. In March 2021, the juvenile court ordered that Mother participate in dependency drug court. Mother withdrew from the program the following month because she did not want to stop using marijuana.

Once located by the Agency, Father reported that he last saw A.D. in March 2020. He wanted a relationship with A.D. but reported that Mother never allowed " 'any long term contact,' " would " 'vanish' " and he had " 'no way to contact her.' " In April 2021, testing confirmed Father's paternity and

_____

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

[3]    The Agency also filed a section 300 petition on H.D.'s behalf. H.D. has a different father and is not a party to this appeal.

the court ordered supervised visitation.[4]  In May 2021, Father progressed to unsupervised visitation with A.D.

At the contested jurisdictional and dispositional hearing in August 2021, the juvenile court declared A.D. a dependent, released her to Father's custody with family maintenance services, and afforded Mother liberal supervised visitation and family enhancement services.  On August 6, 2021, A.D. began residing with Father.  In November 2021, the juvenile court granted Father's request for presumed father status, liberalized Mother's visits to unsupervised, and reminded the parents about the importance of cooperating with each other.

Father valued his employment and worked long hours.[5]  He consistently provided A.D. with a safe and stable home with plenty of food, clothes, and toys.  The social worker described Father as having "a naturally loud voice that often scares" A.D. but stated he is trying to make adjustments.  He is patient with A.D. and tries to provide her with a structured schedule.  A.D., however, wanted to live with Mother.  She reported that Father is mean because he puts her on time-outs.[6]

In March 2022, the juvenile court ordered the parents to participate in in family court services (FCS) mediation to address custody issues.  In her

---

[4]    Father has two other daughters from different women.  He had full custody of his oldest child and 50 percent custody of the other child and reported that these children had previously spent time with A.D.  By the time of the contested hearing, Father's oldest daughter reached the age of majority and moved out.  Father continued to have 50 percent custody of his nine-year-old daughter.

[5]    There is no evidence in the record that Mother was employed.

[6]    The record contains repeated references that A.D. is a highly or very "active" child.

FCS report, the mediator recommended the parents share joint legal custody but that A.D. reside primarily with Father. The mediator recommended Mother's custody to include the first, third, and fifth weekends of the month, plus additional time on Tuesdays and Thursdays from 4:00 p.m. to 8:00 p.m. The mediator also recommended a detailed holiday and birthday schedule.

II.

*Termination of Dependency Jurisdiction and Exit Orders*

At the start of the contested hearing on May 31, 2022, the juvenile court noted the parents had attended an FCS mediation and that it had reviewed the mediator's report. The juvenile court admitted three of the Agency's 2022 reports and the report by the court appointed special advocate (CASA) into evidence without objection. The social worker testified the parents attended a child and family team (CFT) meeting about a week earlier. Evidence before the social worker suggested that A.D. had spent the duration of the month with Mother. A.D. consistently told the social worker that she wanted to be with Mother and did not want to go to Father's home.

The Agency argued Mother should have primary custody to reflect that A.D. mostly lived with Mother for the past month. Mother's counsel acknowledged the FCS report described Mother as argumentative but opined that such behavior did not indicate a protective issue. Mother's counsel emphasized that Mother paid for A.D.'s daycare, took A.D. to all appointments, and urged the court to adopt Mother's proposed exit orders. Father's counsel argued that Mother has been "on the attack" throughout the case and noted that the mediator believed Mother "has been having so much parenting time because my client just can't deal with her. It is too difficult." Father's counsel stated that Mother has the time to take A.D. to appointments because she is unemployed, A.D. spent so much time with

5

Mother because she wore Father down, and Father needed an enforceable court order setting forth a parenting schedule. A.D.'s counsel and guardian ad litem deferred to the mediator's recommendations.

The juvenile court recounted that the Agency needed to remove A.D. from Mother to be safely cared for, no party brought any concerns to its attention that Father "was not doing things he needed to do," and the Agency never requested that Mother receive family maintenance services instead of Father, or that both parents should receive family maintenance services. The court explained that it sent the matter to FCS because Mother requested changing primary physical custody to her:

> "Everyone went into family court services knowing what it was for. It was for us to figure out what was going to be the custody [arrangement] going forward; and a neutral evaluator considered all of the reports, listened to the parties, read everything, and came to a conclusion as to how legal and physical custody should be divided. It is also very specific. Notably, it has details about how the holidays will be spent, how transportation is to be arranged, how all of those things are to be done.
>
> "On the other hand, we have sort of a more vague recommendation by the mother which would essentially put most of the control in her hands as to how these things would happen. We don't know what holidays would be covered, which ones wouldn't. And, again, on the one hand we have mother saying it doesn't really matter what the orders say because father is going to leave [A.D.] with her. If that's the case, why are we seeking to deviate so dramatically from what is the status quo? The status quo has been thrown out quite a bit, but what is the status quo? Legally, the status quo is family maintenance is with the father and that the mother is the visitor. That's legally the status quo. We have some idea that that's not what's been going on the last month maybe. I don't know that to be true, but it almost doesn't matter. The fact that he's

6

willing to give more doesn't mean that he's not doing his job.  He's allowed to give her more visitation if he wants to."

The court ordered shared legal and physical custody but gave Father primary physical custody.  It adopted and attached the parenting plan recommended by the mediator, with minor modifications, and terminated jurisdiction.

## DISCUSSION

Mother contends the juvenile court's section 362.4 exit order must be reversed because (1) it abused its discretion by ordering A.D. to live primarily with Father, asserting the court did so merely because the child had previously been placed with him with family maintenance services, and (2) substantial evidence does not support the court's implicit finding that A.D.'s best interests are promoted by primarily residing with Father.  We reject Mother's claims.

## I.

### *No Abuse of Discretion in Issuing Exit Orders*

The juvenile court is authorized to issue exit orders addressing custody and visitation when terminating dependency jurisdiction over a child.[7] (§ 362.4, subd. (a); *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)  "When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.' " (*In re T.S.*, at p. 513.)  This determination is made without reference to any preferences or presumptions ordinarily applicable in family court.  (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 (*Jennifer R.*); *In re John W.* (1996) 41 Cal.App.4th 961, 972 ["presumption of parental *fit*ness 'that underlies custody law in the

---

[7]     The exit order becomes part of the family law file and remains in effect "until modified or terminated by a subsequent order of the superior court." (§ 362.4, subds. (b), (c); see Cal. Rules of Court, rule 5.700.)

family court just does not apply to dependency cases' "].) "[A] finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of reasons." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

We review a juvenile court's order terminating dependency proceedings and making a custody award for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) "A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child" or "it applies improper criteria or makes incorrect legal assumptions." (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497, italics omitted.) A judgment or an order is presumed to be correct and the party challenging the order must affirmatively show error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) We presume that the juvenile court regularly performed its duty by understanding and applying the law correctly. (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653; Evid. Code, § 664.)

Mother argues the juvenile court abused its discretion by awarding primary custody of A.D. to Father. She asserts the court did so only to maintain the status quo of placement with Father, rather than determining A.D.'s best interests. She further asserts the order was contrary to A.D.'s best interests because the child was living with her, wanted to continue to do

8

so, and no statute or decisional authority supported the juvenile court's notion it was bound to order A.D. to reside primarily with Father because A.D. had been placed with him at the dispositional hearing and remained so placed. The record does not support Mother's contentions. Our review of the record demonstrates the juvenile court's willingness to change the status quo to resolve the parents' custody disagreement. The court ordered primary custody with Father because it implicitly determined from the totality of the circumstances that it would be in A.D.'s best interests, not because it felt bound by the status quo. Accordingly, Mother has failed to demonstrate an abuse of discretion.

At a family review hearing in February 2022, Mother sought primary custody, proposed that the parents mediate this issue, and set the matter for trial as to custody. Father's counsel indicated Father was amenable to each parent having equal custody of A.D. but disagreed with Mother's proposal to revert Father's time with A.D. to overnights and visitation. In March 2022, the parents remained in disagreement regarding custody. After Mother restated her agreement to mediate the dispute and Father indicated no opposition to mediation, the juvenile court ordered the parents to FCS mediation. In April 2022, when continuing the matter because mediation had not yet taken place, the court emphasized how helpful mediation would be in resolving the custody disagreement because courts "almost always order . . . that the child remain in the physical custody at least of the parent who's had the family maintenance service, which would be the father."

The FCS mediation took place in early May 2022. After hearing from the parties at the contested hearing in late May 2022, the juvenile court stated its primary concern was A.D.'s safety, that the status quo has always been family maintenance services with Father, and in most cases where no

protective issues exist, "physical custody would normally entirely go to the parent [who] has been doing the family maintenance services." It reminded the parties that because Mother proposed changing primary physical custody to her, it ordered the matter to FCS mediation to determine custody. The court's action in sending the matter to mediation and its statements throughout the proceeding show that rather than being "bound" by the status quo of maintaining primary custody of A.D. with Father, it was willing to change the status quo after a "a neutral evaluator" considered the reports, listened to the parties and concluded "how legal and physical custody should be divided."

The juvenile court's ultimate decision to adopt the FCS's parenting plan and award primary physical custody to Father does not indicate a failure to consider A.D.'s best interests. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 398 [we presume a trial court was aware of and followed the applicable law].) Even assuming the juvenile court placed undue emphasis on the status quo custody arrangement of Father having primary physical custody of A.D., as " 'the party seeking to upset the status quo' " Mother had the burden of showing why the current custody arrangement should be changed. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1159.) As we discuss below, substantial evidence supports the juvenile court's implicit finding that A.D.'s best interests would be promoted by primarily residing with Father.

## II.

### *Substantial Evidence Supported the Exit Orders*

Mother asserts substantial evidence does not support the juvenile court's implicit finding that giving Father primary custody of A.D. promotes her best interests. Specifically, Mother contends that Father's provision of a

10

safe and stable home does not constitute substantial evidence that A.D. should continue residing with him because she resolved all safety and protective issues and A.D. already spent most of her time with her. In reviewing the sufficiency of the evidence, all conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the judgment, if possible. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.) In assessing what is in the child's best interests when making a custody determination pursuant to section 362.4 a court must consider the totality of the child's circumstances. (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31.) Here, considering the totality of the circumstances, the record contains substantial evidence supporting the juvenile court's implied conclusion that granting Father primary physical custody of A.D. furthered her best interests.

A parent's substance abuse is a relevant consideration in fashioning an exit order regarding custody. (See e.g., *Jennifer R.*, *supra*, 14 Cal.App.4th at p. 713 [upholding refusal to award joint legal custody to mother who "did not follow through on drug rehabilitation referrals and failed to drug test while assuring her therapist she was drug free and had completed rehabilitation"].) In this case, Mother started using drugs at age 16 in 2005 and was under the influence of methamphetamine when arrested at age 17. Mother's chronic illness diagnosis at age 17 caused her to forego illegal substances for approximately 14 years. She resumed methamphetamine use in 2019 based on the stress of being a single parent when A.D. was not yet two years old. Although Mother reportedly maintained her sobriety for a year, she again turned to methamphetamine when pregnant with H.D. Mother believed using methamphetamine while pregnant did not impact H.D.'s health.

Mother stopped using methamphetamine in January 2021, approximately 16 months before the contested hearing. Mother's sobriety from methamphetamine is commendable. But the juvenile court could have reasonably concluded that her recovery remained tenuous. A social worker at a community health clinic where Mother had participated since 2005 reported that Mother became "very motivated to change" when the Agency is involved, but when it is not involved, she "return[ed] to her previous behaviors."

Equally concerning is Mother's attitude toward Father, which impacts the parents' ability to co-parent A.D. Mother's emphasis on her time spent with A.D., transporting A.D. to medical appointments and preschool, and compliance with her case plan are unavailing because her ability to safely parent A.D. is only one aspect in a custody determination. Her ability to cooperate and co-parent with Father is another.

"[W]henever possible, a child should have the benefit of *two* parents to support and nurture him or her." (*Librers v. Black* (2005) 129 Cal.App.4th 114, 123.) Father told the social worker that he wanted a relationship with A.D. but Mother " 'would never allow any long term contact' " and would " 'vanish' " providing him with no way of contacting her. At a CFT meeting in July 2021, Mother expressed her displeasure that Father had been invited to the meeting and accused the social worker of being "an evil person." A month earlier, Mother accused the social worker of having a sexual relationship with Father and claimed she would be suing the County after the case ended.

The Agency's reports made repeated references to hostility between Mother and Father, with the social worker expressing concern that Mother's

hostility toward Father could impact A.D.'s emotional development.[8]  During mediation, Mother continued to demonstrate behaviors supporting Father's allegation that she was difficult to work with.  The mediator described Mother as "antagonistic and argumentative" and "continually" interrupting her and Father.  The mediator expressed the belief that Father "may have gone along with [Mother] in the past so as not to anger her" and remarked that Father has allowed Mother to have "liberal contact" with A.D. despite the visitation schedule ordered by the juvenile court.

The mediator's observations mirrored those of the Agency's social worker who commented that Father "is more relaxed when it comes to . . . the actual coparenting [and] is more open to working with [Mother]" and "suspect[ed] that when the case closes [Father] will allow [A.D.] to live and stay with [Mother] most of the time regardless of what exit orders are made." However, as the juvenile court properly noted, "[T]he fact [Father is] willing to give more [time to Mother] doesn't mean that he's not doing his job.  He's allowed to give [Mother] more visitation if he wants to."

In summary, we conclude substantial evidence supported the juvenile court's implied finding that giving Father primary custody of A.D. promoted her best interests.  Accordingly, we cannot conclude the court abused its discretion by maintaining primary physical custody of A.D. with Father.

---

8    Mother's behavior was not exclusive to Father because H.D.'s father reported that Mother did not let him meet H.D. and tried to keep him out of H.D.'s life.  Mother also demonstrated hostility when communicating with H.D.'s father.

13

## DISPOSITION

The exit orders are affirmed.

DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.