Filed 9/17/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DIANA BRONSHTEYN, | B329890, B327487 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 19SMCV00057 |
| v. | |
| DEPARTMENT OF CONSUMER AFFAIRS | |
| Defendant and Appellant. | |

APPEAL from post-judgment orders of the Superior Court of Los Angeles County, Mark H. Epstein, Judge. Affirmed.

Law Offices of Wendy Musell, Wendy Musell; Vinick Hyams, Jean K. Hyams; Burrell Kagin Law, Darci E. Burrell for Plaintiff and Respondent.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, and Gary S. Balekjian, Katharine A. Tremblay and Jennifer M. Yang, Deputy Attorneys General, for Defendant and Appellant.

When the plaintiff files a case with the prospect of recovering attorney fees, the defense is fully entitled to fight hard. But the defense does so knowing it might end up paying for all the work for both sides. Filing a flood of unselective and fruitless motions can be counterproductive if the plaintiff ultimately prevails, for the bill for that flood will wash up on the defense doorstep. Then the court may look with a wary eye at defense complaints about a whopping plaintiff's bill.

We recently affirmed a judgment in favor of Diana Bronshteyn against her former employer the California Department of Consumer Affairs. (See *Bronshteyn v. Dept. of Consumer Affairs* (May 12, 2025, B325678) [nonpub. opn.] (*Bronshteyn I*).)

In this second appeal, the Department argues the trial court abused its discretion in awarding $4,889,786.03 in attorney fees to Bronshteyn's counsel. As the trial court aptly observed: "[t]he fact that [the Department] did not settle the case early might or might not be good litigation strategy or bad litigation strategy . . . But the biggest thing it does is it makes it hard for [the Department] to claim that [Bronshteyn] shouldn't have spent money litigating to try the case, which is reflected in the number of hours that [counsel] billed."

We affirm the trial court's careful and well-reasoned ruling. Statutory citations refer to the Government Code.

I

In January 2019, Bronshteyn, whom a doctor had diagnosed with fibromyalgia, sued the Department under the California Fair Employment and Housing Act (the Act), section 12900 et seq. She sued for failure to accommodate, failure to

engage in an interactive process, disability discrimination, and failure to prevent discrimination.

The case was a long shot. Jean Hyams, one of Bronshteyn's lead attorneys, admitted to a "significant risk that the jury might be swayed by the fact that the [Department] permitted [Bronshteyn] to take a long leave of absence and, on paper at least, offered her all of the accommodations she had previously requested." From her work in disability rights, Hyams was aware that "women with fibromyalgia are often stigmatized and stereotyped as exaggerating or making up their symptoms." Hyams also conceded the doctor's notes Bronshteyn relied on in requesting leave were "ambiguous," which compounded the risk in taking the case.

The Department fought the case hard from the start.

Wendy Musell, Hyams's co-counsel, approached the Department to discuss settlement and mediation in 2019.

The Department refused to discuss settlement.

In January 2020, which was a year after the lawsuit began, the Department refused to agree to let Bronshteyn file a first amended complaint. This proposed document was very similar to a first amended complaint it had previously stipulated she could file.

Bronshteyn had to file a motion for leave to amend.

The court granted Bronshteyn's motion in July 2020. A defense stipulation would have been reasonable and would have avoided this costly and unproductive motion practice.

The Department demurred to the first amended complaint.

Two years after the lawsuit began, in January 2021, the court overruled the Department's demurrer. The demurrer litigation was time-consuming and accomplished nothing.

The Department moved for summary adjudication. The court denied the motion in July 2021.

Discovery was contentious. Both sides propounded multiple sets of written discovery requests, and both sides filed multiple ex parte applications and motions to compel further responses and documents.

In June 2022, Bronshteyn made a Code of Civil Procedure section 998 offer to compromise for $600,000 and for reasonable attorneys' fees and costs.

The Department rejected the section 998 offer and did not counter.

Trial by jury went for six weeks in the summer of 2022. It too was contentious.

The jury found for Bronshteyn on all counts. Its verdict was $3,324,262 in damages. This sum is more than five times greater than Bronshteyn's section 998 offer.

The Department filed a motion for judgment notwithstanding the verdict. The court denied the motion.

The Department moved for a new trial. The court denied the motion.

The Department appealed the verdict. It lost. (*Bronshteyn I.*, *supra*.) This was in 2025. By now the case was more than six years old.

Bronshteyn moved for statutory attorney fees and costs as the prevailing party under the Act, pursuant to section 12965, subdivision (c)(6). Her counsel requested a lodestar amount of $2,987,583.11, reflecting the number of hours they worked on the case, multiplied by the requested hourly rates: $1,000 for Wendy Musell; $1,100 for Jean Hyams; $1,200 for Leslie Levy; $1,100 for Sharon Vinick; $1,050 for Darci Burrell; $900 for Maraka Willits;

$425 for Brittany Wightman; $350 for bar-certified law students; and $225 for paralegal and legal assistants.

Bronshteyn's attorneys noted they had put more than 3000 hours into the case. They submitted contemporaneous and precise timesheets recorded in six-minute intervals, with breakdowns by day and person. They also filed detailed declarations describing their litigation backgrounds, past fee awards, the work on Bronshteyn's case, the division of labor, and their efforts to limit duplication. Counsel voluntarily applied a five percent reduction to account for clerical work and travel time.

Counsel included declarations from other Los Angeles employment attorneys describing rates and multipliers awarded in their cases. Bronshteyn's counsel included a twenty-two-page declaration from a retained expert. This expert opined the rates Bronshteyn's counsel requested were well within the range of the non-contingent market rates charged by Los Angeles area attorneys of reasonable comparable experience, skill, and reputation for comparable services.

Bronshteyn asked the trial court to apply a 2.0 multiplier to the lodestar amount because: (1) counsel took her case on a contingency basis; (2) the public interest value of her suit was high; (3) the legal questions were difficult; (4) the case precluded counsel from taking other work; and (5) the trial result was a great success.

The Department argued the lodestar amount was "grossly excessive" because: (1) the requested hourly rates were too high; (2) the descriptions of work were too vague; (3) there was too much "intra-office conferencing"; (4) travel time should not be

included; (5) and Bronshteyn over-litigated the case. The Department said Bronshteyn's case was "garden-variety."

Although the Department suggested Bronshteyn's lawyers spent too much time on the case, the Department did not reveal how many hours *its* counsel devoted to the matter.

The Department included a declaration from a retained fee expert. The defense expert recommended the following hourly rates for Bronshteyn's attorneys: $675 for Musell; $700 for Hyams; $225 for Wightman; $650 for Willits; $750 for Levy; $665 for Burrell; and $725 for Vinick.

The defense expert disputed only about five percent of the total hours Bronshteyn's counsel claimed. The trial court remarked the difference of opinion on hours was minor.

The court issued a thoughtful tentative opinion that concluded more information was needed. In assessing whether Bronshteyn's requested fees were reasonable, the court extensively analyzed each of the supporting declarations from other attorneys. The court noted only one of these declarations attached actual fee awards from other cases; the others were merely conclusory. The court suggested these declarations were inadequate to support the rates Bronshteyn sought.

The court cautioned Bronshteyn against double-counting. "[I]f the contingent nature yields an enhancement, then enhancing it again based on the same risk is double-counting; and if the contingent nature yields a higher hourly rate, then again enhancing it again is double-counting."

Turning to the Department's arguments, the court debunked the defense expert's assessment. We mention five of the problems the trial court enumerated.

First, the court rejected the defense expert's claim that "small firms do not charge hourly rates in the same range as larger law firms, because large law firms' client base consists mainly of large corporate clients who are more willing and more able to pay the higher rates of firms who specialize in large complex litigation matters and who charge for, among other reasons, higher overhead costs."

The court responded that "[t]he hourly rate to set is based on a myriad of factors, but size of firm is not one the court believes any firm touts. Rather, the court agrees that the lawyer's reputation and experience play into the rate, but there is no reason to believe that lawyers at smaller firms have a lesser reputation than lawyers at larger firms."

Second, the court rejected the defense expert's presumption that taking contingency cases creates an incentive for counsel to overbill. The expert claimed overbilling stemmed from the fact "there are no billing guidelines and the firm's billing is not contemporaneously or regularly reviewed by the client." The court disagreed. It noted that, on contingency cases, "[u]nless the lawyers here simply have nothing better to do, plaintiff's counsel in a contingency case has every incentive *not* to do unnecessary work. If the additional work will not translate into a greater [recovery] for the client, then the additional work may not lead to a greater fee at all."

Third, the court disapproved the defense expert's use of hourly rates in other cities, as only Los Angeles rates were relevant to this case.

Fourth, the court dismissed the defense expert's application of an average four percent rate increase to fees awarded to the lawyers in the past as "too simplistic." Even assuming the four

percent increase accounted for inflation, it failed to account for changes due to experience, such as winning a major case.

Fifth, the court criticized the expert's opinion about the contingent nature of the case. The expert said this factor should not affect the lodestar and should not be used as an enhancement. The court disagreed. At some point, "[t]he contingent nature of the fee must be incorporated into the calculation."

The court observed the defense expert "actually has only minimal disputes with the number of hours." The court generally accepted the number of hours Bronshteyn's counsel billed, with the exception of travel time.

Although the court was "reluctant to add yet more briefing to an already large docket," the court stated the amount in controversy was somewhere between $1.2 million and $3.5 million (given the differences in lodestar calculations and the multiplier). This disparity justified "taking the time to do [this] right." The court continued the hearing for further briefing and for an exchange of expert reports and supplemental declarations. The court allowed the parties to depose the opposing fee expert, as well as to submit supplemental expert declarations.

Bronshteyn substantiated her counsel's claimed hours and rates by submitting supplemental briefing and additional declarations from counsel and from Bronshteyn's expert.

The Department filed a supplemental opposition brief but, in the wake of the court's critique, submitted nothing further from its fee expert.

After a second hearing, the court granted Bronshteyn's motion in a thirteen-page ruling.

On rates, the court accepted Bronshteyn's factual showing. It found that Bronshteyn's expert's declarations were "the most compelling analysis in the record of a proper hourly rate for the Los Angeles area," and that the plaintiff expert was more credible than the defense expert.

The court observed the Department had submitted nothing further from its expert. Nor had the Department assuaged (or even addressed) the court's concerns with weaknesses in the defense expert's presentation.

In setting the rate level, the court declined to consider the contingent nature of counsel's representation. This factor "should either be reflected in the hourly rate or the multiplier, not both and not neither." The court eschewed double-counting.

The court granted non-contingent hourly rates as follows: $1,000 for Musell; $1,100 for Hyams; $1,000 for Levy; $1,000 for Vinick; $1,000 for Burrell; $850 for Willits; $425 for Wightman; $350 for bar-certified law students; and $225 for paralegals and legal assistants.

In justifying its decision to award rates at the higher end of Los Angeles rates, the court noted: "[t]he quality of lawyering was high; far beyond what the court would expect of an average lawyer—even with the years of experience the lawyers here exhibited."

On the number of hours, the court again accepted Bronshteyn's factual showing. It noted the Department "did not really attack" the number of hours claimed by Bronshteyn's lawyers. This was "a recognition from the defense that, yeah, we [the defense] didn't settle, and therefore, yeah, you [Bronshteyn] did have to litigate and yeah, you [Bronshteyn] did have to bill that time . . . ." The trial court found the defense was "accepting

the consequences of that decision, which is when the fee bill comes, there [are] going to be a lot of hours in it . . . ." Bronshteyn's counsel billed "a whole lot of hours, and that's because this was a hard-fought litigation . . . ."

The trial court found that "[t]he minor billing disputes over travel time and conferences have been resolved by Musell's 5 percent cut across all hours requested by her, as well as an extraordinary voluntary 50 percent cut for all hours incurred for supplemental briefing."

The court awarded a multiplier. The court mulled the question at length and described its rationale. The justifications were that counsel took the case on a contingency basis and that work on it precluded other employment. "[P]laintiff's counsel rolled the dice and the dice could well have come up against them. Had that occurred, counsel would have been left with years of work and nothing (financially) to show for it." Based on these factors, the court awarded a 1.75 multiplier for fees incurred up to and including the jury verdict, and a 1.25 enhancement for hours worked after the verdict.

The total fee award was $4,889,786.03.

The Department appealed.

## II

The Act authorizes the trial court "*in its discretion* . . . [to] award to the prevailing party [...] reasonable attorney's fees and costs . . . ." (§ 12965, subd. (c)(6), emphasis added.) The goal is a fair market value fee that assures counsel can staff meritorious actions that enforce the statute. (*Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal.App.4th 359, 394 (*Horsford*).)

We review fee awards for abuse of discretion. We will not disturb the trial court's judgment unless it is clearly wrong. We

accept the trial court's factual findings supported by substantial evidence, and we imply findings to support the court's order. The burden is on the objector to show error. (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 (*Laffitte*); *Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 873.)

The Department shows no abuse of discretion. The trial court's order carefully explained its valid reasons for rejecting the Department's attacks on Bronshteyn's motion. The Department's appeal merely repeats these faulty attacks.

A

First we tackle the hourly rate calculation.

The Department contends the trial court erred in basing its decision on the opinion of Bronshteyn's expert, claiming his "opinion on hourly rates looked to rates paid to attorneys who were not similarly situated to Bronshteyn's plaintiff-side employment attorneys." It argues this was error because, in addition to "relying heavily on corporate and defense side attorneys," Bronshteyn's expert "only considered top plaintiff-side personal injury and employment attorneys . . . ." The Department contends it was error for the court to use such "rates awarded to attorneys at the top of their field as a *base*, when they should have been used as a *ceiling*."

The court's decision to accept Bronshteyn's expert's opinion was an appropriate exercise of its discretion.

Attorney rates are prices. Price differences in a snapshot of time generally reflect quality differences. The trial judge with the ringside seat is situated to evaluate the quality of a trial lawyer's performance.

Trial judges see an endless procession of lawyers and lawyer fee motions. After years of experience, trial judges can

develop an empirical sense of the prevailing market conditions and the range of individual performances. Some talented and hardworking lawyers can do brilliant work from the very outset of their careers. Other lawyers are vastly experienced but unremarkable. Some attorneys are miserable. The seasoned trial judge is the eyewitness to this parade.

"Expert" opinions in attorney fee cases, on the other hand, can suffer from all the problems that prompted our Supreme Court to issue its opinion in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 769–772. This landmark ruling emphasized trial courts have a substantial gatekeeping responsibility to exclude expert opinions not based on sound logic. This trial judge had an ample basis for disregarding the defense expert "declaration," which was more of an argumentative legal brief than an objective analysis of a reliable data set by an economist.

The trial court opined the rates Bronshteyn's counsel requested were reasonable. This experienced trial judge personally witnessed the work. On this cold record, we will not second-guess.

Nor was the court required to use these hourly rates as a ceiling instead of a base. The court personally observed the skill and effectiveness of Bronshteyn's counsel. (See *Laffitte, supra,* 1 Cal.5th at p. 488.) The court noted in its ruling that "[t]he quality of lawyering was high; far beyond what the court would expect of an average lawyer—even with the years of experience the lawyers here exhibited." From its observations, the court was entitled to find a reasonable fee for Bronshteyn's counsel at the upper end of Los Angeles market rates for attorneys.

We defer to this judgment by an experienced trial judge.

## B

With respect to the number of hours, the Department claims the trial court abused its discretion by awarding hours to Bronshteyn's counsel based on "vague entries and block billing," counsel's "over-litigation" of the case, and "awarding attorneys' fees for administrative work."

The trial court was entitled to approach the Department's attack on the number of hours with skepticism, for the Department did not disclose the number of hours *its* lawyers worked. This would have supplied a logical and objective factor for evaluating Bronshteyn's claims. The Department chose to omit these data, which presumably did not support its argument. (See CACI No. 203 ["If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence"].)

Bronshteyn notes the Department's position on appeal improperly seeks to introduce arguments it did not make to the trial court. Specifically, Bronshteyn says the Department's appellate briefing "is at odds with the evidence it submitted to the trial court," and that it never sought a reduction in hours based on "block billing," "over-litigation," or "administrative work" before this appeal.

Bronshteyn is correct. In its initial tentative decision, the trial court noted the defense expert "actually had only minimal disputes with the number of hours." The defense expert objected only to travel time, conferences, and nine hours of "vague" trial preparation. The total dispute about hours was about equivalent to the five percent cut Bronshteyn's counsel voluntarily applied to their hours. The court determined that Bronshteyn's counsel's

voluntary cuts captured the disputes about billing.  No additional cuts were necessary.

The Department is attempting to raise new theories on appeal that it did not fully present to the trial court.  It has forfeited argument pertaining to the number of hours for which Bronshteyn's counsel seeks compensation.  (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)  There is no basis to disturb the trial court's finding on this issue.

C

We defer to the trial court's analysis on the multiplier question.

The Department accuses the trial court of applying multipliers to the lodestar that "shock[] the conscience" for seven reasons, four of which we will not consider because they either mischaracterize the trial court's order or misstate the law.  The remaining three arguments are that the trial court erred by:  (1) finding that this case precluded Bronshteyn's counsel from other employment; (2) not considering that the fee award would come from public funds; and (3) finding post-judgment work merited a multiplier.  The trial court properly rejected these arguments.

Work on Bronshteyn's case forced her attorneys to turn away other employment.  Hyams and Musell swore this was true.  There was no contrary evidence.  The court accepted the evidence from Hyams and Musell.  We do not revisit this credibility question.

The Department argues the trial court abused its discretion in applying a multiplier because the attorney fee award would come from public funds.  The Supreme Court long ago identified taxpayer burden as a relevant factor.  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)  *Serrano* did not specify when and to what extent

a court should consider the taxpayer burden factor in setting an attorney fee award. (See *id.* at pp. 41–49.) It did, however, affirm an award against government defendants applying a positive multiplier to the lodestar amount. (*Id.* at pp. 48–49.)

We presume this conscientious judge weighed the taxpayer burden factor in the balance. Failure expressly to mention a factor does not mean the trial court abused its discretion. Trial courts are not required to issue *any* statement of decision with regard to a fee award. Appellate courts indulge all presumptions to support the judgment as to matters on which the record is silent. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*).)

As for the Department's argument that the court abused its discretion "by applying a multiplier to all work performed by Bronshteyn's counsel after judgment because there was no contingent risk," the Department's citations do not support its position.

*Ketchum* does not help the Department. *Ketchum* held it was error to add a contingency multiplier when, due to a "*mandatory*" fee statute, a fee recovery was no longer contingent. (*Ketchum, supra*, 24 Cal.4th at p. 1142.) By contrast, the different statute involved in this case is subdivision (c)(6) of section 12965, which provides the court may award fees "in its discretion." These fees were not mandatory. They were always contingent—until the trial court issued its final fee order.

*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 582 (*Graham*), which the Department also cites, is relevant, but it contravenes the Department's argument. *Graham* provides that "the enhancement justified for fees in the underlying litigation may differ from the enhancement warranted in the fee

litigation, and that a lower enhancement, or no enhancement, may be appropriate in the latter litigation." (*Ibid.*) *Graham* explained: "[t]he fact that the risk of fee litigation is generally less than the risk of litigation on the merits of the suit justifies a lower attorney-fee multiplier for the former . . . ." (*Ibid.*)

The trial court's award of a 1.25 multiplier for post-judgment fee litigation is consistent with *Graham*. The court reasoned Bronshteyn's chance of recovery was greater after the jury entered a verdict in her favor. But the court aptly recognized there was still some risk, noting: "[o]f course the motion for a new trial/jnov might have been granted and the appeal may well turn out to be successful." It was a proper exercise of discretion for the court to award the multiplier to Bronshteyn's counsel in recognition of this risk.

## DISPOSITION

We affirm the orders and award costs to the respondent.

WILEY, J.

We concur:

STRATTON, P. J.

VIRAMONTES, J.